486

JOHN H. HOUSTON, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 84436.   Filed July 10, 1962.

*John H. Houston,* pro se.
*Crane C. Hauser, Esq.,* for the respondent.

TIETJENS, *Judge:* The Commissioner has determined deficiencies in petitioner's income tax for the taxable years 1953 and 1954 of $483.19 and $58, respectively.

The issues presented are: (1) Whether the 5-year statute of limitations for assessment under section 275(c) of the Internal Revenue Code of 1939 is applicable to petitioner's return for 1953 by reason of petitioner's having omitted an item of gross income properly includible therein exceeding 25 percent of the gross income stated in the return; and (2) whether petitioner's letter dated June 27, 1955, together with the enclosed income statement and letter from the United Nations Korean Reconstruction Agency, constituted a return for taxable year 1954 under section 6011(a) of the Internal Revenue Code of 1954 so as to start the running of the statute of limitations on assessments contained in section 6501(a) of the 1954 Code.

The parties are agreed that if assessment of the deficiencies determined by the Commissioner is not barred by the statute of limitations, a decision may be entered for the Commissioner.

FINDINGS OF FACT.

The case was submitted upon a complete stipulation of all the facts which we find accordingly. The exhibits attached to the stipulation are incorporated by reference.

Petitioner is an individual whose present address is United States Army Procurement Agency, Japan, APO 503, San Francisco, California. During 1953 and 1954 petitioner was married to Frances Houston. The returns for 1953 and 1954 involved in this proceeding were

filed with the district director of internal revenue at Baltimore, Maryland.

During 1953, 1954, and a part of 1955, petitioner was employed by the United Nations Korean Reconstruction Agency (hereinafter referred to as UNKRA) and was in Korea or Japan during most of that time. Petitioner's income from UNKRA for the years 1953 and 1954 was $7,670.82 and $9,011.03, respectively.

Petitioner's wife filed a joint return (Form 1040) for taxable year 1953 on February 10, 1954, showing gross income of $3,968.53, including her personal earnings and income from rental property. This return is hereinafter referred to as the first 1953 return. Petitioner's income from UNKRA for 1953 was omitted from the first 1953 return. Accompanying the return was a Form 936, Authorization—Joint Returns or Declarations, executed by petitioner under date of November 13, 1953.

Petitioner mailed a letter dated June 27, 1955, to the district director, enclosing the following:

(1) A return (Form 1040) for taxable year 1953 (hereinafter referred to as the second 1953 return), dated June 27, 1955, reporting as gross income only petitioner's income from UNKRA for 1953. The second 1953 return purported to be a joint return of petitioner and his wife but was executed only by petitioner.

(2) A letter signed by petitioner and dated June 25, 1955, stating that the absence of his wife's signature from the second 1953 return was due to the fact that she was in the United States and petitioner was stationed in Korea. Petitioner stated that it was his and his wife's intention to file a joint return.

(3) Petitioner's check for $1,307.22, the amount of tax reported due on the second 1953 return.

(4) An income statement from UNKRA showing income paid to petitioner for both 1953 and 1954.

(5) A letter from UNKRA, Headquarters, Seoul, dated June 24, 1955, expressing the opinion that petitioner's UNKRA earnings after February 10, 1954, would be excludible from his 1954 return under section 911(a)(2) of the 1954 Code and that his earnings from January 1, 1954, to February 9, 1954, were insufficient to carry any tax liability.

In his cover letter dated June 27, 1955, petitioner requested the district director's "comments" on the letter from UNKRA which "indicates that my income from UNKRA in 1954 will be nontaxable." Petitioner also stated, "I would like to know how you want my 1954 tax handled."

Petitioner's letter dated June 27, 1955, and enclosures thereto bear a "received" stamp dated June 5, 1955.

488

In its administrative consideration of the case, the Internal Revenue Service did not treat petitioner's letter dated June 27, 1955, as an income tax return for 1954.

Petitioner filed an individual "amended" return (Form 1040) for the year 1954, showing no tax due. This return was received by the district director on May 14, 1956.

Petitioner executed two Form 872's, Consent Fixing Period of Limitation Upon Assessment of Income and Profits Tax, extending the period of limitation for assessment for 1953 and 1954 to June 30, 1960. These consents were effective February 4, 1959.

Statutory notice of deficiencies for 1953 and 1954 was mailed November 24, 1959.

OPINION.

As to the deficiency for taxable year 1953, the Commissioner contends that petitioner's income from UNKRA was "properly includible" in the first 1953 return which was filed on February 10, 1954, and that the omission of this income, which was of an amount greater than 25 percent of the gross income stated in the return, invoked the 5-year statute of limitations for assessment under section 275(c) of the 1939 Code.[1] A consent extending the period of limitation was executed by the petitioner more than 3 years but less than 5 years from the date on which the period of limitation began to run on the first 1953 return. The statutory notice of deficiency was mailed within the period allowed by the consent.

Petitioner contends, among other things, that his 1953 income from UNKRA was not "properly includible" in the first 1953 return because of the effect of section 3804 of the 1939 Code.[2] Petitioner argues that

[1] SEC. 275. PERIOD OF LIMITATION UPON ASSESSMENT AND COLLECTION.
Except as provided in section 276—
* * * * * * *
(c) OMISSION FROM GROSS INCOME.—If the taxpayer omits from gross income an amount properly includible therein which is in excess of 25 per centum of the amount of gross income stated in the return, the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time within 5 years after the return was filed.
[2] SEC. 3804. TIME FOR PERFORMING CERTAIN ACTS POSTPONED BY REASON OF WAR.
(a) INDIVIDUALS.—The period of time after December 6, 1941, during which an individual is continuously outside the Americas (if such period is longer than ninety days), and the next ninety days thereafter, shall be disregarded in determining, under the internal revenue laws, in respect of any tax liability (including any interest, penalty, additional amount, or addition to the tax) of such individual—
(1) Whether any of the following acts was performed within the time prescribed therefor :
(A) filing any return of income, estate, or gift tax (except income tax withheld at source and income tax imposed by Chapter 9 or any law superseded thereby) ;
* * * * * * *
(f) ADDITIONAL TIME TO BE DISREGARDED.—In the case of an individual serving in the Armed Forces of the United States, or serving in support of such Armed Forces, in an area designated by the President of the United States by Executive Order as a "combat zone" * * * the period of time disregarded under this section, notwithstanding the limitations of subsections (a) and (c), shall include the period of service in such area, * * * and the next one hundred and eighty days thereafter.

his 1953 income from UNKRA was timely reported in his second 1953 return. Therefore, he argues, the 3-year statute of limitations [3] had run prior to the execution of a consent and the consent is not valid to extend the period of limitation.

By its terms, section 3804 of the 1939 Code provides that the period of time for the performance of certain enumerated acts, including the filing of a return, will be disregarded where a taxpayer is serving in, or in support of, the Armed Forces in a combat area. It is established that as an employee of UNKRA, the petitioner qualified as an individual "in support of Armed Forces" in a "combat zone." [4] January 31, 1955, was designated as the date of termination of combatant activities in Korea and adjacent waters [5] and petitioner's second 1953 return was filed within 180 days of that date.

It is clear that petitioner could have delayed filing his original 1953 return under the provisions of section 3804 of the 1939 Code. Here, however, petitioner's original 1953 return was the joint return filed on February 10, 1954, by his wife on his behalf and with his specific authorization. Petitioner delayed reporting only that portion of his personal income received from UNKRA until he filed a second 1953 return. We are unable to agree with petitioner's position that section 3804 of the 1939 Code contemplates such a procedure.

The evident purpose of section 3804 of the 1939 Code, as it applies to this case, is to relieve taxpayers who, because of combat zone conditions, find it impossible or impractical to file their tax returns on time. See, e.g., S. Rept. No. 1631, 77th Cong., 2d Sess., p. 251 (1942). We do not find any language in the statute, nor are we able to discover any legislative intent, which would allow one in the prescribed status to omit or delay reporting income received while he is in a combat zone, beyond the time he in fact files a return.

Petitioner's salary received during 1953 from UNKRA was "properly includible" under sections 22(a) and 42(a) of the 1939 Code in his first 1953 return, since the provision on which petitioner seeks to rely does not authorize postponed reporting once a taxpayer in fact files a return. The amount of salary omitted from that return is in excess of 25 percent of the gross income stated therein.

Petitioner's second 1953 return is at best an amended return. It is settled law that an amended return does not operate to prevent section 275(c) of the 1939 Code from applying to the original return. *Ira Goldring*, 20 T.C. 79 (1953). As for the case of *Charles F. Bennett*, 30 T.C. 114 (1958), urged upon us by the petitioner, it is sufficient to point out that there we applied the 3-year statute of limitations to an original, albeit delinquent, return.

---

[3] Sec. 275(a), I.R.C. 1939.
[4] Rev. Rul. 53-207, 1953-2 C.B. 442; Exec. Order 10195, 15 Fed. Reg. 9177, 1951-1 C.B. 6.
[5] Exec. Order 10585, 20 Fed. Reg. 17, 1955-1 C.B. 17.

As to the 1953 deficiency, petitioner also urges us to construe the decision in *Colony, Inc.* v. *Commissioner*, 357 U.S. 28 (1958), as meaning that the 5-year statute of limitations under section 275(c) of the 1939 Code applies only where the Commissioner has been prejudiced by the failure to include all income and the taxpayer acted negligently in failing to report all his income. We have examined the Supreme Court's opinion and do not find that it supports petitioner's proposition.

In the *Colony* case, the Supreme Court held that section 275(c) of the 1939 Code was applicable only where an item of income was actually absent from the return and not where there was an overstatement of a deduction which was listed on the return. The Court stated (p. 36) :

We think that in enacting § 275(c) Congress manifested no broader purpose than to give the Commissioner an additional two years to investigate tax returns in cases where, because of a taxpayer's omission to report some taxable item, the Commissioner is at a special disadvantage in detecting errors. * * *

As a general proposition, the Commissioner is always at a "special disadvantage" where an item of income is omitted from a return, for whatever reason that item is omitted. We find no rule enunciated here requiring specific prejudice to the Commissioner before section 275(c) becomes applicable.

It may well be that petitioner reported his 1953 income in what he thought honestly, although erroneously, was the proper manner. However, it has long been established that section 275(c) applies even though the omission may be characterized as honest and nonnegligent. *Ewald* v. *Commissioner*, 141 F. 2d 750 (C.A. 6, 1944) ; *Estate of C. P. Hale*, 1 T.C. 121 (1942) ; *Edwin L. Wiegand*, 14 T.C. 136 (1950), reversed on other grounds 194 F. 2d 479 (C.A. 3, 1952). There is nothing in either the legislative history of section 275(c) cited by the Court in the *Colony* case or the language of the opinion to support a different rule.

Petitioner argues that the view of section 3804 of the 1939 Code which we have taken would deprive petitioner and his wife of the benefit of filing a joint return where, as here, petitioner sought to utilize the postponed filing provision. Regulations issued pursuant to authority contained in section 3804(a) provide that the period to be disregarded under section 3804 will also apply to the filing of a joint return where one of the spouses qualifies under the section. 26 C.F.R. sec. 472.301 (1943 Supp.), T.D. 5279, 1943 C.B. 953. See Rev. Rul. 55–127, 1955–1 C.B. 559, which also holds that under section 3804 (f) the filing of a separate return by the wife does not preclude subsequent filing of a joint return for the taxable year by husband and wife ; that a joint return filed by the wife without authorization is not binding upon the husband ; but that a joint return filed by the wife under a proper power of attorney is a binding election.

We hold that the 5-year statute of limitations for assessment under section 275(c) of the 1939 Code is applicable to petitioner's original return for 1953 filed February 10, 1954.[6]

As to the second issue presented, petitioner contends that his letter dated June 27, 1955, and the enclosed income statement and letter from UNKRA fully disclosed his 1954 income and constituted the return required by law.[7] Therefore, petitioner argues, the 3-year statute of limitations on assessments provided in section 6501(a) of the 1954 Code began running when his letter was received. If his letter is deemed to be his original return, the 3-year statute of limitations had run prior to petitioner's execution of a consent and the assessment made thereunder is barred. If not, then the statute of limitations did not begin running prior to May 14, 1956, when petitioner filed a Form 1040 for 1954 and the assessment is not barred by the period of limitation.

A number of cases hold that in order to start the running of the assessment period a return need not be perfectly accurate or complete or even be filed on the form prescribed if it is filed in substantial compliance with the requirements for a return. *Zellerbach Paper Co.* v. *Helvering*, 293 U.S. 172 (1934); *Germantown Trust Co.* v. *Commissioner*, 309 U.S. 304 (1940); *F. A. Hall Co., Inc.*, 3 B.T.A. 1172 (1926); *Harvey Coal Corporation*, 12 T.C. 596 (1949). We do not believe that petitioner's letter meets this test.

In order to qualify, a purported return must represent a good faith effort to state fully items of income, deductions, credits, and other necessary information so as to permit computation and assessment. *Florsheim Bros. Dry Goods Co.* v. *United States*, 280 U.S. 453 (1930); *Cantrell & Cochrane, Ltd.*, 19 B.T.A. 16 (1930). Although petitioner's letter made full disclosure of his total income from UNKRA for 1954, it does not state whether or not he is claiming exemption under section 911(a)(2) of the 1954 Code as to his salary from February 10, 1954, to the end of the year, but merely seeks "comments" on the idea. Even presuming that the exemption was applicable and that the income could be accurately prorated between the taxable and exempt portions of the year, there is no schedule of the personal exemptions, deductions, or credits to be applied against the taxable income. Furthermore, there is no indication of whether the letter should be considered a joint return (as he and his wife intended in their 1953 return) or an individual return (as was the Form 1040 for 1954 filed subsequently by petitioner).

---

[6] Under section 275(f), I.R.C. 1939, the period of limitation for this early return began to run March 15, 1954, "the last day prescribed by law for filing thereof * * *." Sec. 3804, I.R.C. 1939 does not change the time prescribed for filing returns but provides for disregarding certain periods in determining whether the act "was performed within the time prescribed therefor."

[7] Secs. 6011 and 6012, I.R.C. 1954; sec. 1.6011 *et seq.*, Income Tax Regs.

A document intended to be filed as a return should give some indication of that fact to the Commissioner in order to facilitate the administration of the tax laws. Cf. *Commissioner* v. *Lane-Wells Co.*, 321 U.S. 219 (1944). In the cases which we have examined holding that there was substantial compliance with the statutory requirements, the taxpayers had in fact filed a completed form, although it may have been the wrong one. We do not believe it reasonable to expect that the Commissioner should have treated petitioner's letter forwarding other documents and requesting information as a final return for 1954 and it, in fact, was not treated as such.

Individual tax returns must be signed and verified "by a written declaration that it is made under the penalties of perjury." Sec. 6065, 1954 Code; sec. 1.6065–1, Income Tax Regs.; *Lucas* v. *Pilliod Lumber Co.*, 281 U.S. 245 (1930); *Jesse Ullman Reaves*, 31 T.C. 690 (1958); *Roy Dixon*, 28 T.C. 338 (1957); *Sax Rohmer*, 21 T.C. 1099 (1954). It is clear that the petitioner did not satisfy this requirement in his purported return.

Finally, we do not believe that petitioner's letter was honestly and in good faith intended to be a return. *Florsheim Bros. Dry Goods Co.* v. *United States, supra; Zellerbach Paper Co.* v. *Helvering, supra.* The letter was essentially a cover letter forwarding a Form 1040 for 1953 along with various other documents relating to that form and seeking information regarding the taxation of his 1954 income from UNKRA. In his own words, petitioner sought "comments" on the taxability of his 1954 income and asked guidance as to "how you want my 1954 tax handled." On its face, this letter contemplated the filing of a return based upon the information sought.

Petitioner further urges that the Commissioner waived his right to insist upon the filing of a return other than petitioner's letter dated June 27, 1955, by the failure to answer the request for information therein. Although the Commissioner failed to reply, we do not believe that petitioner intended to rely upon his June 27, 1955, letter as a return and therefore he was not misled by the Commissioner's silence. Under those circumstances, we will not presume that the Commissioner waived the filing of a document substantially meeting the requirements established for a proper return. Cf. *Lucas* v. *Pilliod Lumber Co., supra; Sax Rohmer, supra.*

We hold that petitioner's letter dated June 27, 1955, was not a return which would start the running of the statute of limitations. Since the letter was not a valid original return, the subsequent Form 1040 filed May 14, 1956, could not "amend" it so as to make the letter a valid return effective from the date it was filed.

*Decision will be entered for the respondent.*