Alfonzo L. DOWELL and Vivian T. Dowell, Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE, Appellee.

No. 78–1341.

United States Court of Appeals, Tenth Circuit.

Argued Nov. 26, 1979.

Decided Feb. 11, 1980.

Stephen Jones of Jones & Gungoll, Enid, Okl. (Julius M. Greisman and Nancy S. Abramowitz of Arnold & Porter, Washington, D. C., with him on the briefs), for appellants.

Richard Farber, Dept. of Justice, Washington, D. C. (M. Carr Ferguson, Asst. Atty. Gen., Gilbert E. Andrews and Daniel F. Ross, Attys., Tax Division, Dept. of Justice, Washington, D. C., with him on the brief), for appellee.

Before SETH, Chief Judge, HOLLOWAY, Circuit Judge, and BROWN, District Judge *.

SETH, Chief Judge.

This is an appeal from a ruling of the United States Tax Court against appellants. *Dowell v. Commissioner*, 68 T.C. 646. The facts are undisputed. Taxpayers filed fraudulent income tax returns for calendar years 1963, 1964, 1965, and 1966. On September 13, 1968, taxpayers filed nonfraudulent amended returns for 1965 and 1966, and on November 25, 1968 they filed nonfraudulent amended returns for 1963 and 1964.

The Government used the amended returns in its fraud investigation, and also used them to convict taxpayers of willfully filing fraudulent returns for 1963–1966. *United States v. Dowell*, 446 F.2d 145 (10th Cir.).

The Government apparently also used the amended returns to determine additional taxes due for all four years plus penalties and interest. Taxpayers received a notice of deficiency issued December 11, 1974, and filed a petition in the Tax Court which sought a refund and a bar against further assessments.

The taxpayers' position is that the nonfraudulent amended returns satisfied the requirements of 26 U.S.C. § 6501(a), and accordingly started the three-year period of

---

* Honorable Wesley E. Brown, of the District of Kansas, sitting by designation.

limitation. Thus they assert that the Government failed to assess within the three-year period. The Tax Court held in substance that there was no limitation period for assessment of the 1963–1966 taxes because the original returns were fraudulent, and the matter was governed only by § 6501(c)(1) which entitled the Government to assess tax "at any time." Thus it held that the taxpayers could not start the period provided in § 6501(a). For the reasons that follow we must disagree with the ruling of the Tax Court.

■ The general statute of limitations, 26 U.S.C. § 6501(a), provides "any tax imposed by this title shall be assessed within 3 years after the return was filed." However, it is often difficult to determine whether certain filings are "returns." The Supreme Court in *Zellerbach Paper Co. v. Helvering,* 293 U.S. 172, 55 S.Ct. 127, 79 L.Ed. 264 held:

> "Perfect accuracy or completeness is not necessary to rescue a return from nullity, if it purports to be a return, is sworn to as such . . . , and evinces an honest and genuine endeavor to satisfy the law. This is so though at the time of filing the omissions or inaccuracies are such as to make amendment necessary."

Thus once the taxpayer has evinced an honest and genuine effort to satisfy the law by filing such a return, the § 6501(a) period begins to run.

In *John D. Alkire Inv. Co. v. Nicholas,* 114 F.2d 607 (10th Cir.), this court held that a subsequent corrective filing to a *deficient return* started the three-year limitations period. Taxpayer had filed returns from 1926 to 1935 that "not only failed to disclose requisite information but were misleading and calculated to prevent discovery of material facts." In late 1936, taxpayer filed amended returns for each year in question. These contained the required information, and we held they started the limitations period. There was no holding of fraud in *Alkire* but the original returns were totally deficient and misleading.

In *Bennett v. Commissioner,* 30 T.C. 114, *acq.* 1958–2 C.B. 3, taxpayer originally failed to file any return. The Tax Court found as fact the "failure to file was deliberate and fraudulent with intent to evade tax." Taxpayer eventually filed a return which satisfied the requirements of the three-year statute of limitations. The Tax Court held the subsequent filing of an honest return triggered the three-year limitations period notwithstanding the previous applicability of § 6501(c)(3). The court reasoned:

> "For, once a nonfraudulent return is filed, putting the Commissioner on notice of a taxpayer's receipts and deductions, there can be no policy in favor of permitting assessment thereafter at any time without limitation. We think that the statute of limitations begins to run with the filing of such returns."

This reasoning is equally compelling in this case. Furthermore, the Internal Revenue Service adopted the *Bennett* holding in Rev. Rul. 79–178, 1979–23 I.R.B. 16. The Tax Court did not here follow its *Bennett* opinion because it reasoned the *Bennett* court applied the three-year limitation to "an original, although delinquent return," and therefore "[t]his is different from petitioners' situation." The distinction thus was made between a fraudulent failure to file and a fraudulent return.

The question would seem to be whether taxpayers have filed a return that meets the requirements of § 6501(a) and *Zellerbach,* not whether the return was "original" or "amended." The fraudulent returns filed in the first instance here were really not "returns" within the meaning of § 6501(a) or *Zellerbach.* They started no statute of limitations; they simply entitled the Government to make its assessment "at any time" as provided in § 6501(c)(1). This "at any time" does not mean regardless of what may take place. It is not, as the Government argues, some sort of period of limitation or "statute of limitations." We are thus not concerned with an act which stops the running of a period of limitations. We are concerned instead with something which *starts* the period. Section 6501(c) represents the antithesis of a limitations

concept, and in the absence of anything else the commencement of any period of repose for fraudulent or evasive "returns" is put in limbo.

■ The purpose of § 6501(c) is to provide the Government time to unearth information the taxpayer did not furnish and to file an assessment. Once the Government has the information from a *Zellerbach* filing or as in *Alkire* or as said in *Bennett*, "there can be no policy in favor of permitting assessment thereafter at any time without limitation." Thus the Government's reliance on cases such as *Kaltreider Construction, Inc. v. United States*, 303 F.2d 366 (3d Cir.), and *Houston v. Commissioner*, 38 T.C. 486, is misplaced.

The original returns in the case before us are in many respects comparable to those in *John D. Alkire Inv. Co. v. Nicholas*, 114 F.2d 607 (10th Cir.). In the cited case there was found to be no fraud, but we said, as mentioned above:

"The returns not only failed to disclose requisite information but were misleading and calculated to prevent discovery of material facts. Returns of that kind are not effective to start the period of limitation running."

The amended returns were held to be sufficient to start the period of limitations. We consider that the *Alkire* decision is not necessarily controlling, but is sufficiently similar to indicate the conclusion to be reached in this appeal.

The position of the Government also fails to recognize that §§ 6501(c)(1) and 6501(c)(3) are in *pari materia* and accordingly should be construed consistently with one another. The Revenue Act of 1921 extended the unlimited assessment period to include failure-to-file situations, and also included this in the same subsection with fraudulent filings. *See* 10 *J. Mertens, The Law of Federal Income Taxation* §§ 57.09 and 57.10 (1976). These two situations were so included in the same subsection through the Internal Revenue Code of 1939, § 276(a). *See Colony, Inc. v. Commissioner*, 357 U.S. 28, 29 n. 1, 78 S.Ct. 1033, 1034 n. 1, 2 L.Ed.2d 1119. The 1954 Code retained

them in the same subsection, but for some undisclosed reason placed the two situations into separate subdivisions, §§ 6501(c)(1) and 6501(c)(3). Congress provided no indication that it intended statute of limitations treatment to differ between taxpayers who filed fraudulent returns, and those who fraudulently failed to file.

The Government raises the additional argument that the statute governing failure to file a return, § 6501(c)(3), would be rendered superfluous by taxpayers' reading of § 6501(c)(1) (fraudulent filing). This argument is not persuasive, and it has carried little weight through the decades of litigation on this point. It is a better reading of § 6501 to conclude that Congress foresaw the need for express exceptions to the general statute of limitations in at least two situations—fraudulent filing and failure to file. The fraud penalties and criminal prosecution take care of the fraud problem. The "at any time" assessment is not a further penalty. Once the taxpayer has filed a *Zellerbach-Alkire* return the "at any time" reason is removed, and the matter proceeds as in any tax case. No irrevocable forfeiture of the benefits of limitation periods is contemplated as an additional punishment or penalty. That the "case" may be in one division of the IRS or in another division can make no difference.

■ The Government raises two subsidiary issues. It argues taxpayers' amended returns for 1963 and 1964 were unsigned, and it contends that taxpayers consented to an extension of the limitations period for 1966. We find no evidence that an unconditional consent to the extension of the limitation period was made. As to the unsigned returns, it is well-settled that as a general proposition an unsigned return does not start the statute of limitations period. *Kalb v. United States*, 505 F.2d 506 (2d Cir.); *Doll v. C. I. R.*, 358 F.2d 713 (3d Cir.) (per curiam). This rule is not without exception. In the case before us the Government "accepted" the unsigned returns. It did not return them for signature as was the practice or otherwise indicate any doubt that they were the returns of the taxpay-

ers. This case is unusual as to this acceptance aspect as to the unsigned returns, and also as to the other amended returns. As has been indicated above, the Government used the amended returns in its investigation of the taxpayers, and it also relied on and used the returns in the prosecution of the fraud case against taxpayers. We have no indication in this record that in so doing the filing of, the identity of, or the validity of the returns was questioned by the Government. The use in the fraud case is alone sufficient to constitute "acceptance" for all purposes.

We find no merit to the contention that as to the *original* 1966 return the 25% provision applied to extend the limitation period. Section 6501(e) was not applicable thereto.

The judgment of the Tax Court is REVERSED and the case is REMANDED.