RAYMOND D. KLEMP AND ANN L. KLEMP, PETITIONERS *v.*
COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 14491–79.     Filed August 5, 1981.

*Kevin O'Connell,* for the petitioners.
*Gary R. DeFrang,* for the respondent.

OPINION

HALL, *Judge*: This case is before the Court on petitioners'
motion for summary judgment. Rule 121, Tax Court Rules of
Practice and Procedure.

Respondent determined deficiencies in petitioners' taxes,
plus additions to tax for fraud under section 6653(b)[1] as
follows:

| Year | Deficiency | Addition to tax under sec. 6653(b)[2] |
|------|-----------|----------------------------------------|
| 1970 | $1,347 | $1,868 |
| 1971 | 1,452 | 4,111 |
| 1972 | 2,079 | 7,658 |
| 1973 | 4,860 | 10,946 |

The issue for decision is whether the statute of limitations bars
the assessment and collection of deficiencies in income taxes
and additions to the taxes for the years 1970 through 1973.

---

[1]All section references are to the Internal Revenue Code of 1954 as in effect during the
years in issue.

[2]The fraud penalties are larger than the deficiencies because the deficiencies are based on
the amended returns while the fraud penalties are based on the original returns. See sec.
6653(c)(1).

For purposes of this motion only, the facts have been fully stipulated and are found accordingly.

Raymond D. and Ann L. Klemp, husband and wife, resided in Eugene, Oreg., at the time they filed their petition. Petitioners timely filed joint income tax returns for the years 1970, 1971, and 1973. Petitioners filed their 1972 joint income tax return on June 21, 1973. (These returns will be referred to as petitioners' original returns.)

There was an underpayment of the tax required to be shown on petitioners' original returns for each of the years 1970 through 1973. All or a part of each such underpayment was due to fraud. Petitioners omitted from their original 1973 return gross income in excess of 25 percent of the gross income reported and failed to disclose receipt of such omitted gross income on the return or in a statement attached thereto.

In a letter dated July 26, 1974, respondent notified petitioners that their original 1973 return was to be audited. On October 17, 1974, petitioners met for the first time with a representative of respondent. At that meeting, they presented respondent's representative with amended income tax returns (the amended returns) for the years 1970 through 1973.

None of petitioners' amended returns omits gross income exceeding 25 percent of the reported amounts. In addition, the tax underpayments, if any, not reported on the amended returns are not due to fraud.

Respondent issued his notice of deficiency in this case on July 9, 1979.

In their motion for summary judgment petitioners claim that respondent's proposed assessments are barred by the statute of limitations found in section 6501(a).[3] Respondent, on the other hand, asserts that since petitioners' original returns were fraudulent, section 6501(c)(1)[4] controls and he may assess a tax at any time. Alternatively, respondent contends that

---

[3]Sec. 6501(a) provides:

(a) GENERAL RULE.—Except as otherwise provided in this section, the amount of any tax imposed by this title shall be assessed within 3 years after the return was filed (whether or not such return was filed on or after the date prescribed) * * * and no proceeding in court without assessment for the collection of such tax shall be begun after the expiration of such period.

[4]Sec. 6501(c)(1) provides:

(c) EXCEPTIONS.—

(1) FALSE RETURN.—In the case of a false or fraudulent return with the intent to evade

since petitioners' original fraudulent 1973 return omitted from gross income an amount in excess of 25 percent of the amount reported, his proposed assessment for 1973 is not barred because the applicable period of limitations is 6 years as provided in section 6501(e).[5]

This case presents the same question we addressed in *Dowell v. Commissioner*, 68 T.C. 646 (1977), revd. 614 F.2d 1263 (10th Cir. 1980). In *Dowell*, the taxpayers initially filed fraudulent income tax returns for the years 1963 through 1966. Subsequently, the taxpayers filed nonfraudulent amended returns. More than 3 years after the filing of the amended returns, respondent and the taxpayers entered into agreements to extend the period of limitations for assessing a tax. Respondent ultimately issued his notice of deficiency within the time provided for by the extensions. Since the extensions are valid only if executed within the period of limitations (sec. 6501(c)(4)), the question in *Dowell* was whether the amended returns barred respondent from the assessment and collection of taxes.

We held that petitioners' filing of the original fraudulent returns controlled the period of limitations, that the amended returns had no effect on the period of limitations, and, accordingly, under section 6501(c)(1), respondent was entitled to assess the tax at any time. The Tenth Circuit reversed.

In the present case, petitioners ask that we abandon our position in *Dowell* and adopt the position of the Tenth Circuit. Based on a thorough reevaluation of this issue, we conclude that the Tenth Circuit's result in *Dowell* is correct.

Section 6501(a) provides that, except as otherwise provided, the period of limitations for the assessment of a tax runs for 3 years after the return is filed. The two major categories of exceptions to this general rule are found in sections 6501(c) and 6501(e). Section 6501(c)(1) provides that in the case of the

---

tax, the tax may be assessed, or a proceeding in court for collection of such tax may be begun without assessment, at any time.

[5]The relevant portion of sec. 6501(e) is sec. 6501(e)(1)(A), which provides:

(A) GENERAL RULE.—If the taxpayer omits from gross income an amount properly includible therein which is in excess of 25 percent of the amount of gross income stated in the return, the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time within 6 years after the return was filed. * * *

filing of a false or fraudulent return with the intent to evade tax, the tax may be assessed at any time. Section 6501(e) provides that, except as otherwise provided in section 6501(c), in the case of a taxpayer who omits from gross income an amount in excess of 25 percent of the gross income reported on the return, the tax may be assessed at any time within 6 years after the return was filed.

The Tenth Circuit in *Dowell* pointed out that unlike sections 6501(a) and 6501(e), section 6501(c)(1) is not a statute of limitations but rather the antithesis thereof.[6] Section 6501(c)(1) provides that under certain circumstances there is no period of limitations. The entire thrust of the Tenth Circuit's opinion, with which we agree, is that the filing of the amended returns did not change a period of limitations but rather started one. Prior to the filing of petitioners' amended returns in this case, no period of limitations was running. Upon the filing of the correct amended returns, the 3-year statute of limitations started running.[7]

Although it can be argued that "the return" in section 6501(a) indicates that for the purpose of the various statutes of

---

[6]That sec. 6501(c)(1) is not a statute of limitations can be discerned from an examination of what constitutes a statute of limitations. A statute of limitations *limits* the time within which an action can be taken. See 53 C.J.S., Limitations of Actions, sec. 1; 51 Am. Jur. 2d, Limitations of Actions, sec. 2. Sec. 6501(c)(1), as pointed out by the Tenth Circuit, does not provide any time limit on the assessment or collection without assessment of taxes.

In addition, legislative history indicates that Congress does not view sec. 6501(c)(1) as a statute of limitations. In discussing sec. 276(a) of the 1934 Code (a predecessor to sec. 6501(c)(1)), the House report commented:

"The present law permits the government to assess the tax without regard to the statute of limitations in case of failure to file a return or in case of a fraudulent return."

H. Rept. 704, 73d Cong., 2d Sess. 35 (1934). See also S. Rept. 558, 73d Cong., 2d Sess. 44 (1934).

[7]The Fifth Circuit in *Woolf v. United States*, 578 F.2d 1103 (5th Cir. 1978), adopted a somewhat different approach in dealing with sec. 6501(c)(2). In *Woolf*, the taxpayer willfully attempted to defeat or evade FICA taxes. Under such circumstances, sec. 6501(c)(2) provides that such taxes may be assessed or collected without assessment at any time. Eventually, the taxpayer filed untimely but substantially accurate returns. The taxpayer argued that the filing of such returns started the running of the sec. 6501(a) period of limitations. The Fifth Circuit disagreed and emphasized that the key inquiry under sec. 6501(c)(2) is whether the taxpayer established that his willful attempt to evade taxes ended with the filing of his untimely returns. Based on the taxpayer's failure to establish that fact, the court held that there was no applicable period of limitations. The court specifically stated that, assuming the initial applicability of sec. 6501(c)(2), it was not deciding whether the period of limitations provided under sec. 6501(a) would start running upon the later filing of correct amended returns.

limitations contained in section .6501 there is only one return per year, presumably the first return filed,[8] such a narrow reading of the statute is not appropriate when there is a good policy reason for a broader interpretation. While there is a general 3-year statute of limitations in section 6501(a), as we have noted above, other subsections of section 6501 provide longer or unlimited periods for assessment and collection of the tax. For example, subsection (c) provides for no limitation in the case of false returns or no returns, and subsection (e) provides for a 6-year statute in the case of substantial omissions of income. These various limitations are intended to give respondent adequate time to assess the tax. In *The Colony, Inc. v. Commissioner*, 357 U.S. 28 (1958), the Supreme Court noted that the congressional purpose underlying the enactment of the predecessor to section 6501(e) was—

to give the Commissioner an additional two years to investigate tax returns in cases where, because of a taxpayer's omission to report some taxable item, the Commissioner is at a special disadvantage in detecting errors. In such instances the return on its face provides no clue to the existence of the omitted item. [357 U.S. at 36.]

Similarly, the purpose of section 6501(c)(1) is to provide the Commissioner with an unlimited amount of time when he is at a special disadvantage based on the taxpayer's fraud. This is the position we took in *Bennett v. Commissioner*, 30 T.C. 114 (1958), where we held that the filing of a return subsequent to the fraudulent failure to file a return was sufficient to start the running of the period of limitations. In *Bennett v. Commissioner, supra* at 123–124, we stated:

For, once a nonfraudulent return is filed, putting the Commissioner on notice of a taxpayer's receipts and deductions, there can be no policy in favor of permitting assessment thereafter at any time without limitation. We think that the statute of limitations begins to run with the filing of such returns. Cf. *J. P. Bell Co.*, 3 B.T.A. 254, 255; *Paul Haberland*, 25 B.T.A. 1370, 1376–1377; *Helvering v. Campbell*, 139 F.2d 865, 868 (C. A. 4). Accordingly,

---

[8]See, e.g., *Sargent v. Commissioner*, 22 B.T.A. 1270 (1931) (taxpayers' original return started the running of the period of limitations and such period cannot be affected by the filing of amended returns); *Weaver v. Commissioner*, 4 B.T.A. 15 (1926) (statute of limitations begins running on the filing of original—not amended—returns); *National Refining Co. of Ohio v. Commissioner*, 1 B.T.A. 236 (1924) (the phrase "the return" has a definite article and singluar subject and therefore can only mean the return contemplated by the relevant statute).

unless the delinquent returns were themselves fraudulent, the period of limitations began to run on April 21, 1950, when they were filed, * * *

Based on this reasoning, we can see no reason for not allowing the section 6501(a) period of limitations to control in the present case.[9]

The second issue raised by respondent is his assertion that since petitioners omitted from gross income an amount in excess of 25 percent of the amount reported on their original fraudulent 1973 return, the applicable period of limitations is 6 years, as provided in section 6501(e), instead of the unlimited period contained in section 6501(c). Section 6501(e) explicitly does not apply to situations covered by section 6501(c). Respondent stipulated that petitioners' original 1973 return was fraudulent. Accordingly, no period of limitations began running upon the filing of petitioners' original return. The only period of limitations that ever became applicable in this case is the period provided in section 6501(a), which period expired before respondent mailed his notice of deficiency.[10]

Based on the foregoing, petitioners' motion for summary judgment will be granted.

> *An appropriate order and decision will be entered.*

Reviewed by the Court.

WILBUR, *J.*, concurring in part and dissenting in part: I concur in the interpretation of section 6501(c) by the majority.

---

[9]Were respondent not precluded from assessing and collecting the deficiency by the running of the statute of limitations, he would not be prevented from collecting the fraud penalty because petitioners filed amended nonfraudulent returns. It is well established that the filing of an amended return does not affect the amount of an addition to tax which results from a taxpayer's original return. *Bennett v. Commissioner*, 30 T.C. 114, 123 (1958); *George M. Still, Inc. v. Commissioner*, 19 T.C. 1072, 1076–1077 (1953), affd. 218 F.2d 639 (2d Cir. 1955).

[10]In *Dowell v. Commissioner*, 68 T.C. 646, 649 (1977), we observed that "It is well settled that when a taxpayer files an original return and thereafter an amended return, the statute of limitations begins to run from the date of the original return, and not the date of the filing of the amended return." Absent a fraudulent return, the filing of a subsequent amended return after an original nonfraudulent return has been filed will, of course, not extend the period of limitations under sec. 6501(a) or 6501(e). The respective periods under these sections will continue to commence with the filing of the original return, and not the amended return. See *Houston v. Commissioner*, 38 T.C. 486 (1962).

Respondent would leave the statute open for that portion of eternity concurrent with the taxpayer's life, whether he lives 3 score and 10 or as long as Methuselah. In most religions, one can repent and be saved, but in the peculiar tax theology of respondent, no act of contrition will suffice to prevent the statute from running in perpetuity. Merely to state the proposition is to refute it, unless some very compelling reasons of policy require visiting this absurdity on the taxpayer. The majority makes it clear that the reasoning of *Bennett v. Commissioner*, 30 T.C. 114 (1958), applies to the question presented in this case.

However, I cannot subscribe to the result the majority reaches under section 6501(e). I believe that, based on our decision in *Goldring v. Commissioner*, 20 T.C. 79 (1953), respondent should have 6 years from the date the original 1973 return was due in which to assess, and, therefore, the notice of deficiency was timely when mailed on July 9, 1979. On March 15, 1946, the petitioners in *Goldring* filed their 1945 income tax returns omitting more than 25 percent of the gross income stated therein. On June 16, 1947, petitioners filed amended returns for the 1945 taxable year which purported to correct, in part, the original omission so as to reduce it below 25 percent. Respondent issued a notice of deficiency for 1945 on March 15, 1951, more than 3 years after the amended return was filed but less than 5 years after the filing of the original return. We held that the deficiency notice was timely under section 275(c) (the predecessor of sec. 6501(e)) since it was issued within 5 years after the original return was filed, although more than 3 years after the amended return. We stated that the 5-year limitation period under section 275(c) started to run upon the filing of the original return and that the filing of the amended return had no effect for statute of limitations purposes.[1]

---

[1]Similarly, it is well settled that the filing of an amended return does not alter the period of limitations under sec. 6501(a) (and predecessor section) which started to run upon the filing of the original return. See, e.g., *Vitamin Co. v. Commissioner*, 21 B.T.A. 311 (1930); *Lancaster Lens Co. v. Commissioner*, 10 B.T.A. 1153 (1928). Both sec. 6501(a) and sec. 6501(e) contain definite periods of limitations, and, thus, the filing of an amended return (which has no statutory basis, see *Goldring v. Commissioner*, 20 T.C. 79 (1953)) could not alter the period of limitations that started upon the filing of the original return. However, since sec. 6501(c)

Similarly, in *Houston v. Commissioner*, 38 T.C. 486 (1962), the taxpayer's wife filed a joint 1953 return on February 10, 1954, having been properly authorized to do so by her husband who was serving in a combat zone. The return reported only the wife's income of $3,968.53. Subsequently, the taxpayer filed a joint return (on June 27, 1955), reporting only his own salary of $7,670.82. A consent to extend the statute of limitations to June 30, 1960, was signed on February 4, 1959. The Commissioner sent a notice of deficiency for 1953 on November 24, 1959. We rejected petitioner's arguments that the statute of limitations had run prior to his signing the consent to an extension. Having found that more than 25 percent of gross income had been omitted from the original 1953 joint return filed by the taxpayer's wife, it was held that the statute of limitations ran for 5 years from the due date for the original return (the original return having been filed early):

> Petitioner's second 1953 return is at best an amended return. It is settled law that an amended return does not operate to prevent section 275(c) of the 1939 Code from applying to the original return. *Ira Goldring*, 20 T.C. 79 (1953). As for the case of *Charles F. Bennett*, 30 T.C. 114 (1958), urged upon us by the petitioner, it is sufficient to point out that there we applied the 3-year statute of limitations to an original, albeit delinquent, return. [*Houston v. Commissioner, supra* at 489.]

It is thus clear that in the section 6501(e) situation, the original return starts the limitation period and that for such purpose the subsequent amended return is ignored. *Goldring* and *Houston* cannot be read any other way, and *Houston* makes it clear that *Bennett*—on which the majority specifically relies—does not alter this result. Even considered on a clean slate, the majority decision on section 6501(e) is wrong; how it can possibly be reached with *Goldring* and *Houston* on the books is beyond me.

The present case involves facts virtually identical to *Goldring*; and the parties agree that the taxpayers' original return contained a substantial omission within the meaning of

is not a statute of limitations, no period ever began running at the filing of the original return, and, thus, the filing of a nonfraudulent amended return changes the character of the original fraudulent return thereby triggering the normal 3-year period of limitations under sec. 6501(a).

section 6501(e). *Goldring* and *Houston* make it clear that the 6-year statute of limitations applies and a deficiency notice is timely even though it is sent out more than 3 years after the amended return is filed. These cases plainly state that the subsequent filing of an amended return will not affect the limitations period under section 6501(e). Yet the majority now holds under precisely the same circumstances (except that the dereliction is also accompanied by fraud) that the Commissioner is barred from assessing although the 6-year statute of limitations has not yet run. Not only is this impossible to reconcile with *Goldring* and *Houston*, and the purpose and policy of section 6501, it is anomalous in the extreme to rule that when fraudulent intent accompanies a 25-percent omission, the taxpayer's period of exposure under the statute is shortened.

The majority makes short work of the section 6501(e) issue, merely stating that "section 6501(e) explicitly does not apply to situations covered by section 6501(c)." But the statutory language says that the 6-year period provided in section 6501(e) applies "Except as *otherwise* provided in subsection (c)." (Emphasis added.) This simply makes clear the obvious— that where the 6-year period of subsection (e) and the unlimited period of subsection (c) are both applicable, the taxpayer may not confine the respondent to the shorter period. To effectuate this objective, Congress has simply stated that the 6-year period is inapplicable when a period in perpetuity already applies.[2]

Additionally, the majority has compounded its misreading of section 6501(e) with a catch–22 twist that should not be overlooked. It holds that section 6501(e) "does not apply to situations covered by section 6501(c)"—that is where the statute runs in perpetuity. But it has at this point already held the statute doesn't run in perpetuity, that the terms of section 6501(c) are inapplicable. The majority holds not only that the statute applicable to petitioners' 1973 return fails to run in perpetuity, but also that it expired on October 17, 1977—about 3½ years after the original return was filed. Put another way,

---

[2]This is borne out by the respondent's regulations under sec. 6501(e) which provide: "(c) *Exception.* The provisions of this section do not *limit* the application of section 6501(c)." Sec. 301.6501(e)–1(c), Proced. & Admin. Regs. Emphasis added.

we are told in one breath that the 6-year statute is inapplicable because under section 6501(c) the statute runs in perpetuity, and in the next breath, that the statute doesn't run in perpetuity, but for less than 4 years.

Logic and precedent are not the only casualties of this approach, for commonsense must be added to the list of the wounded. While Congress has provided the longest period for assessment where fraud is involved—the majority has reversed the procedure. According to the majority, absent fraud, the respondent would have had 6 years to assess under section 6501(e); since it was stipulated fraud was present, he only had 3½ years as to 1973. Why fraud should be rewarded over inadvertence or negligence escapes me.

The majority notes that in *The Colony, Inc. v. Commissioner*, 357 U.S. 28, 36 (1958), the Supreme Court explained the purpose of section 6501 as being—

to give the Commissioner an additional two years to investigate tax returns in cases where, because of a taxpayer's omission to report some taxable item, the Commissioner is at a special disadvantage in detecting errors. In such instances the return on its face provides no clue to the existence of the omitted item.

In *Houston v. Commissioner*, 38 T.C. 486, 490, we added:

As a general proposition, the Commissioner is always at a "special disadvantage" where an item of income is omitted from a return, for whatever reason that item is omitted. We find no rule enunciated here requiring specific prejudice to the Commissioner before section 275(c) becomes applicable.

By providing a period of limitations substantially shorter than the 6-year period afforded by section 6501(e), even though there has admittedly been a 25-percent omission as required by that subsection, the majority simply misinterprets the statute ignoring prior precedent along the way. For these reasons, I respectfully dissent.

PARKER, *J.*, dissenting: I respectfully dissent. The majority holds that, subsequent to the filing of a fraudulent original return, the 3-year statute of limitations in section 6501(a) begins to run upon the filing of a nonfraudulent amended

return. I believe this interpretation of section 6501 fails to give effect to the plain language of the statute.

Section 6501(a) provides that "Except as otherwise provided in this section, the amount of any tax * * * shall be assessed within 3 years after the return was filed (whether or not such return was filed on or after the date prescribed)." As stated by the majority, exceptions to the general rule of section 6501(a) may be found in sections 6501(c) and 6501(e). Section 6501(c)(1) provides that, in the case of the filing of a false or fraudulent return with the intent to evade tax, the tax may be assessed "at any time." Section 6501(e) provides that, except as otherwise provided in section 6501(c), in the case of a taxpayer who omits from gross income an amount in excess of 25 percent of the gross income reported on the return, the tax may be assessed at any time within 6 years after the return was filed.

In the present case, section 6501(c)(1) applies to the filing of the original fraudulent returns and specifically provides an unlimited period for assessment of the taxes. The majority apparently agrees that the fraudulent returns herein were "returns" for purposes of triggering the exception in section 6501(c)(1).[1] The majority reasons that, since the fraudulent returns did not start the running of any period of limitations, the nonfraudulent amended returns became the "returns" referred to in section 6501(a) for purposes of starting the 3-year statute of limitations.

However, there is no indication in the wording of section 6501 that any action subsequent to the filing of fraudulent original returns, including the filing of nonfraudulent amended returns, renders section 6501(c)(1) inapplicable and triggers section 6501(a). There is no language in the statute requiring that a statute of limitations ever begin running where section 6501(c)(1) applies in the first instance. No subsequent event can alter the fact that petitioners herein filed fraudulent original returns. Just as we have held that the filing of a nonfraudulent amended return does not bar the imposition of

---

[1] If the fraudulent returns were not "returns," then sec. 6501(c)(1) would not apply in the first place. The Ninth Circuit, to which an appeal would lie in this case, has specifically held that a fraudulent return was nevertheless a "return" where it purported to be a return, and there was no apparent refusal to comply with the requirements for filing returns. *United States v. Crowhurst*, an unreported case (9th Cir. 1980, 46 AFTR 2d 80–5673, 80–2 USTC par. 9638).

the fraud penalty itself (*Bennett v. Commissioner*, 30 T.C. 114, 125 (1958)), likewise, it should not cut short the time within which that penalty may be assessed.

The main thrust of the majority's opinion is that the policy underlying the unlimited period of limitations in section 6501(c)(1) is to provide respondent with sufficient time to investigate a taxpayer's returns where respondent is at a special disadvantage based on the taxpayer's fraud. The majority believes that that policy no longer applies once, as in the present case, the taxpayer has filed nonfraudulent amended returns putting respondent on notice as to his income and deductions. Thus, according to the majority, once respondent receives a nonfraudulent amended return, he no longer needs an unlimited period within which to assert the fraud penalty.

In support of its position, the majority cites the Supreme Court's language in *The Colony, Inc. v. Commissioner*, 357 U.S. 28 (1958), stating that the purpose of the extended 5-year period in the predecessor to section 6501(e) was to give respondent 2 extra years to investigate returns where he was at a disadvantage due to the taxpayer's omission of items totaling 25 percent of his gross income. However, in the section 6501(e) situation, the subsequent filing of amended returns without substantial omissions does not affect the running of the 5- (or 6-) year period which commenced with the filing of original returns with substantial omissions. *Houston v. Commissioner*, 38 T.C. 486 (1962); *Goldring v. Commissioner*, 20 T.C. 79 (1953). In other words, once a taxpayer files an amended return correcting the substantial omission in his original return, even though respondent then has all of the facts pertaining to that omission before him and he no longer needs additional time to assess the proper tax, the filing of the amended return does not cut short the original period of limitations.

In the section 6501(c)(1) situation, when a taxpayer files a nonfraudulent amended return in an attempt to correct a fraudulent original return, respondent will have all of the facts relating to the underpayment but will not necessarily have all of the facts he needs to prove by clear and convincing evidence a fraudulent intent to evade tax. Absent proof of that specific intent, evidence of an underpayment standing alone will not support the imposition of the fraud penalty. Thus,

while 3 years may be an adequate period within which to assert the fraud penalty where the taxpayer's fraudulent intent is established in prior criminal proceedings or by stipulation, the 3 years may not be enough time for respondent to prove fraudulent intent where a more extensive investigation is required. The majority's interpretation of section 6501 does not take into account respondent's heavy burden of proof in fraud cases.

The situation in *Bennett v. Commissioner, supra*, relied on by the majority, is distinguishable from the present case. The taxpayer in *Bennett* failed to file returns within the meaning of the predecessor to section 6501(c)(3), and his failure to file was fraudulent.[2] We held that the subsequent filing of a delinquent return started the 3-year period of the predecessor to section 6501(a).

Section 6501(c)(3) provides that in the case of the failure to file a return, the tax may be assessed at any time. Section 6501(a) expressly applies to a return "whether or not such return was filed on or after the date prescribed." Thus, where a delinquent return is ultimately filed, section 6501(a) clearly applies and renders section 6501(c)(3) inapplicable. In cases such as *Bennett*, it follows that where taxpayers filed delinquent returns, the exception in section 6501(c)(3), by its own terms, no longer applied and the 3-year period in section 6501(a), by its express terms, began to run on the date the delinquent returns were filed, notwithstanding the fact that the initial failure to file was fraudulent.

Although the policy reasons stated above for allowing respondent an unlimited period to assert and prove fraud also apply to a fraudulent failure to file, Congress did not distinguish between fraudulent and nonfraudulent failures to file and specifically provided that, in the "no return" situation of section 6501(c)(3), the later filing of a delinquent return shall start the 3-year period in section 6501(a). In the present case and in *Dowell v. Commissioner*,[3] however, the exception in section 6501(c)(1) is not rendered inapplicable by the filing of a nonfraudulent amended return. The statute does not say that

---

[2] The "failure to file" described in sec. 6501(c)(3) may be fraudulent or nonfraudulent.
[3] 614 F.2d 1263 (10th Cir. 1980), revg. and remanding 68 T.C. 646 (1977).

subsequent events have any effect on the application of section 6501(c)(1) to a fraudulent original return.[4]

There is no language in section 6501 that requires respondent to assert a fraud penalty within 3 years of the filing of a fraudulent original or nonfraudulent amended return. As for statutory construction, the general rule is that a statute of limitations barring the collection of taxes otherwise admittedly due and owing is to be strictly construed in favor of the Government, and its applicability will not be presumed in the absence of clear congressional action. *Lucia v. United States*, 474 F.2d 565, 570 (5th Cir. 1973); *McDonald v. United States*, 315 F.2d 796, 801 (6th Cir. 1963).

Since section 6501 does not expressly limit respondent's time for asserting the fraud penalty, this Court should not impose its own limitation on the unlimited period already provided for asserting and proving the fraud penalty.

TANNENWALD, SCOTT, STERRETT, and CHABOT, *JJ.*, agree with this dissenting opinion.

---

[4]See *Woolf v. United States*, 578 F.2d 1103, 1105 (5th Cir. 1978).