**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**NOV 5 2001**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

NATHAN T. OLPIN,

      Petitioner-Appellant,

v.

COMMISSIONER OF INTERNAL
REVENUE,

      Respondent-Appellee.

No. 00-9003

---

**APPEAL FROM THE DECISION OF THE
UNITED STATES TAX COURT
(T.C. No. 10437-99)**

---

W. Kevin Jackson of Jensen, Duffin, Carman, Dibb & Jackson, Salt Lake City,
Utah, for Petitioner-Appellant.

Karen D. Utiger (Randolph Hutter and Ann B. Durney with her on the briefs),
U.S. Department of Justice, Tax Division, Washington, D.C., for Respondent-
Appellee.

_____

Before **KELLY** and **McKAY**, Circuit Judges, and **BROWN**, District Judge.[*]

_____

_____

[*]The Honorable Wesley E. Brown, United States Senior District Judge for
the District of Kansas, sitting by designation.

**McKAY**, Circuit Judge.

_____

Nathan T. Olpin appeals a United States Tax Court order granting summary judgment in favor of the Commissioner of Internal Revenue and denying his motion for summary judgment. Our jurisdiction arises under 26 U.S.C. § 7482(a)(1).

## I. Standard of Review

We review Tax Court decisions "in the same manner and to the same extent as decisions of the district courts in civil actions tried without a jury." § 7482(a)(1). The relevant facts are undisputed, and we review the Tax Court's grant and denial of summary judgment de novo. Tele-Communications, Inc. v. Comm'r, 104 F.3d 1229, 1232 (10th Cir. 1997). The issue is whether Mr. Olpin and his wife at that time filed a valid 1995 federal income tax return electing to report their income jointly when neither party had signed the return.

## II. Background Facts and Proceedings

The following facts are taken from unchallenged affidavits filed by Mr. Olpin, judicial admissions, and undisputed documentary evidence submitted with the parties' summary judgment motions and responses.

Mr. Olpin and his former wife ("Mrs. Olpin") were legally married throughout 1995. R. Doc. 1, at 1; Doc. 23, at 3. Mr. and Mrs. Olpin divorced in

September 1996 after fifteen years of marriage. R. Doc. 1, at 1; Doc. 23, at 3. During the entire course of their marriage, Mr. and Mrs. Olpin had always filed joint federal and state tax returns; they are not tax protesters. In 1996, the Olpins jointly applied for and signed under oath two extensions of time in which to file their joint 1995 federal tax returns. R. Doc. 1, at 2; Doc. 23, at 3. Both of the Olpins submitted income information for the 1995 tax year to their professional tax preparer. The Olpins failed to sign the return before it was filed in October 1996, though the tax preparer did sign. Mr. Olpin testified that their failure to sign was inadvertent. Both of the Olpins testified that it had been their intention in 1996 to file a joint federal income tax return. The Olpins filed joint state tax returns. R. Doc. 9, at 2; Doc 23, at 4.

The IRS processed the return in November 1996 and issued tax account transcripts for the 1995 tax year. The return showed that the Olpins owed $3,795. Mr. Olpin had included a $50 tax payment with the unsigned return and then made a series of payments totaling $4,510.93, including penalties and interest, from February 1997 through October 1997. R. Doc. 17, at 2.

Mr. and Mrs. Olpin divorced in September 1996. Mrs. Olpin declared bankruptcy in February 1997. In March 1997, the IRS filed its first proof of claim in the amount of $2,500 against Mrs. Olpin's estate for the unpaid taxes. In September 1997, the IRS amended the amount of its claim to $5,012, despite the

fact that Mr. Olpin had been making payments. The IRS informed Mrs. Olpin during her bankruptcy deposition that she and Mr. Olpin had failed to sign their 1995 joint return. Mrs. Olpin testified that the IRS also informed her that its claim for deficiency was based in part on Mr. Olpin's allegedly unreported income for 1995. However, the May 1999 deficiency notice alleged no discrepancies between Mr. Olpin's reported income and actual income. Mrs. Olpin testified that because she had not seen the 1995 joint return and had no independent knowledge of Mr. Olpin's income for 1995, "at the suggestion of the Internal Revenue Service [she] signed and filed a separate federal individual tax return for the tax year 1995." R. Doc. 9, at 2.

Mrs. Olpin informed Mr. Olpin of the unsigned joint return and of her understanding that the IRS would object to the confirmation of her bankruptcy petition unless she filed a separate return for 1995. Over Mr. Olpin's objection, Mrs. Olpin filed her separate return on February 9, 1998. By this time, Mr. Olpin had satisfied the entire joint tax liability. The IRS amended its bankruptcy proof of claim to state that Mrs. Olpin owed no back taxes for the 1995 tax year on the same day Mrs. Olpin filed her separate return. R. Doc. 19, Ex. I.

In August 1998, the IRS informed Mr. Olpin that he had not filed a valid 1995 tax return because the joint return was not signed. R. Doc. 7, Ex. E. Mr. Olpin met with IRS agents on two occasions and asked to sign the return in order

-4-

to correct the problem. However, the agents refused to let him sign it. Id. Doc.17, at 2-3. The IRS informed Mr. Olpin that he and Mrs. Olpin could still file an amended "valid joint return," but he could not "unilaterally file a joint return" without Mrs. Olpin's signature. Id. Doc. 7, Ex. E. Mrs. Olpin had already filed her separate tax return by that time, and she refused to sign another joint return with Mr. Olpin even though she could have done so. Therefore, an amended joint return with two signatures was never filed with the IRS.

On September 14, 1998, the IRS reversed its original processing of the Olpins' joint 1995 tax return to state that it was not a valid return because it was not signed. In May 1999, the Commissioner issued a Notice of Deficiency to Mr. Olpin stating that the 1995 joint return was "not considered a tax return" because it "was not signed by either spouse." Id. Ex. A. Using the income information supplied by Mr. Olpin on the original joint tax return and by Mrs. Olpin on her separate return, the tax deficiency was then based on a refiguring of Mr. Olpin's tax liability under a married filing separately status.

Mr. Olpin challenged the deficiency in the Tax Court. The parties filed cross-motions for summary judgment. Mr. Olpin argued that the original 1995 joint return would have been valid but for the IRS's untimely and unreasonable refusal to allow him to sign the return. The Commissioner argued that a return must be signed or it is invalid. The Tax Court granted summary judgment in the

Commissioner's favor. Mr. Olpin appealed to this court. On January 25, 2001, this court entered a decision reversing the judgment of the Tax Court. On March 9, 2001, a petition for panel rehearing was filed by the Commissioner. On May 1, 2001, this court issued a written order granting the Commissioner's petition for rehearing. We withdrew our prior opinion and vacated our judgment. The case was reargued to this panel.

### III. Tax Return Signature Requirements

The Internal Revenue Code states that "any return . . . required to be made under any provision of the internal revenue laws or regulations shall be signed in accordance with forms or regulations prescribed by the Secretary." 26 U.S.C. § 6061. The Code also requires that "[e]xcept as otherwise provided by the Secretary, any return . . . required to be made under any provision of the internal revenue laws or regulations shall contain or be verified by a written declaration that it is made under the penalties of perjury." 26 U.S.C. § 6065. The Code clearly states that, in order to be valid, a tax return must be signed. Additionally, Treasury Regulations provide that "[a] joint return of a husband and wife (if not made by an agent of one or both spouses) shall be signed by both spouses." Treas. Reg. §1.6013-1(a)(2). The 1995 Form 1040 (the form filed by the Olpins) states on its face, "If a joint return BOTH must sign." Doc. 6, Ex. B. The Secretary has not created any applicable exception to § 6065's verification

requirement. Because the Olpins did not file electronically, the Code exception for electronically filed returns does not apply in this case.

The general rule when a tax return is unsigned is that it is invalid. Lucas v. Pilliod Lumber Co., 281 U.S. 245, 249 (1930) (a return unverified by oath did not meet the plain requirements of the statute); Brafman v. United States, 384 F.2d 863, 868 (5th Cir. 1967) (the Code requires tax returns to be signed in order to be effective); Shea v. Comm'r, 780 F.2d 561, 568 (6th Cir. 1986) ("failure of either party to sign the return . . . renders it invalid."); Bachner v. Comm'r, 81 F.3d 1274, 1280 (3d Cir. 1996) ("inclusion of the taxpayer's signature is a prerequisite to the validity of the tax return"); Doll v. Comm'r, 358 F.2d 713, 714 (3d Cir. 1966) ("return failed to meet the requirements of the statute" where neither taxpayer signed). The courts have fashioned one exception. If one spouse on a joint return signs, then there is an inquiry as to the intent of the other spouse. In re Hanesworth, 936 F.2d 583, 1991 WL 114639 (10th Cir. 1991). However, the Hanesworth exception is not applicable here because *neither* party signed the joint return. Therefore, in this case, it is not necessary to reach the issue of intent.

Even if Mr. Olpin had been allowed to sign the return at a later date, the Hanesworth exception would not be available to him. His own evidence showed that at the time he offered to sign the return Mrs. Olpin had already filed a separate return and refused to sign the joint return. Accordingly, as a matter of

law, he could not meet the standard of proof required.

## IV. Waiver

Mr. Olpin's argument that the "acceptance" of his return by the IRS can cure the lack of signatures must fail. Even though the IRS processed the Olpins' joint return, accepted Mr. Olpin's payments, and failed to return the Form 1040 for the Olpins to sign, acceptance cannot cure an invalid return. The Supreme Court has stated that "explicit statutory requirements [] must be observed and are beyond the dispensing power of Treasury officials." Angelus Milling Co. v. Comm'r, 325 U.S. 293, 296 (1945); see also Lucas v. Pilliod Lumber Co., 281 U.S. 245 (1930) (an analogous case in which the Supreme Court explicitly rejected the notion of waiver by acceptance).

## V. Administrative Practice - Duty

The duty to sign a tax return is on the taxpayer. 26 U.S.C. §§ 6061, 6065. However, in a case like Mr. Olpin's, when the IRS discovers the error, the IRS usually returns the tax return to the taxpayer for his signature. The IRS apparently inadvertently missed the lack of signatures on Mr. Olpin's return. While it may be the administrative practice of the IRS to return unsigned tax returns to taxpayers, the Internal Revenue Code does not place such a duty on the IRS. Rather, the Internal Revenue Code places the duty to sign a tax return solely on the taxpayer. See id. Operating procedures of the IRS do not create rights in

the taxpayer.  Gille v. United States, 33 F.3d 46, 48 (10th Cir. 1994) (citations omitted) (IRS procedures do not have the force of law because the procedures manual is "directory rather than mandatory"); see also Doll v. Comm'r, 24 T.C.M. (CCH) 995, 996 (1965), aff'd, 358 F.2d 713 (3d Cir. 1966) (even though the IRS could have made taxpayers aware of failure to sign their returns and requested signatures, that still did not constitute waiver of signature requirements); Bachner, 81 F.3d at 1281 (IRS agents "with only delegated authority" have no authority to waive statutory requirements concerning return submissions). Accordingly, the administrative practice argument is unavailing.

## VI.  Estoppel

We asked the parties to address the issue of estoppel in their briefs on appeal.  Upon review of the briefs, we conclude that the argument is without merit.

For the foregoing reasons, the decision of the Tax Court is AFFIRMED.