# BADARACCO ET AL. *v.* COMMISSIONER OF INTERNAL REVENUE

No. 82–1453.   Argued November 28, 1983—Decided January 17, 1984*

---

*Together with No. 82–1509, *Deleet Merchandising Corp.* v. *United States*, also on certiorari to the same court.

*Barry I. Fredericks* argued the cause for petitioners in both cases and filed briefs for petitioner in No. 82–1509. *John J. O'Toole* and *Edwin Fradkin* filed a brief for petitioners in No. 82–1453.

*Albert G. Lauber, Jr.,* argued the cause for respondents in both cases. With him on the brief were *Solicitor General Lee, Assistant Attorney General Archer, Gary R. Allen,* and *John A. Dudeck, Jr.*

JUSTICE BLACKMUN delivered the opinion of the Court.

These cases focus upon § 6501 of the Internal Revenue Code of 1954, 26 U. S. C. § 6501. Subsection (a) of that statute establishes a general 3-year period of limitations "after the return was filed" for the assessment of income and certain other federal taxes.[1] Subsection (c)(1) of § 6501, however, provides an exception to the 3-year period when there is "a false or fraudulent return with the intent to evade tax." The tax then may be assessed "at any time."[2]

The issue before us is the proper application of §§ 6501(a) and (c)(1) to the situation where a taxpayer files a false or fraudulent return but later files a nonfraudulent amended return. May a tax then be assessed more than three years after the filing of the amended return?

---

[1] Section 6501(a) reads in full:

"Except as otherwise provided in this section, the amount of any tax imposed by this title shall be assessed within 3 years after the return was filed (whether or not such return was filed on or after the date prescribed) or, if the tax is payable by stamp, at any time after such tax became due and before the expiration of 3 years after the date on which any part of such tax was paid, and no proceeding in court without assessment for the collection of such tax shall be begun after the expiration of such period."

[2] Section 6501(c)(1) reads:

"In the case of a false or fraudulent return with the intent to evade tax, the tax may be assessed, or a proceeding in court for collection of such tax may be begun without assessment, at any time."

I

*No. 82-1453.* Petitioners Ernest Badaracco, Sr., and Ernest Badaracco, Jr., were partners in an electrical contracting business. They filed federal partnership and individual income tax returns for the calendar years 1965–1969, inclusive. "[F]or purposes of this case," these petitioners concede the "fraudulent nature of the original returns." App. 37a.

In 1970 and 1971, federal grand juries in New Jersey subpoenaed books and records of the partnership. On August 17, 1971, petitioners filed nonfraudulent amended returns for the tax years in question and paid the additional basic taxes shown thereon. Three months later, petitioners were indicted for filing false and fraudulent returns, in violation of § 7206(1) of the Code, 26 U. S. C. § 7206(1). Each pleaded guilty to the charge with respect to the 1967 returns, and judgments of conviction were entered. *United States* v. *Badaracco,* Crim. No. 766–71 (NJ). The remaining counts of the indictment were dismissed.

On November 21, 1977, the Commissioner of Internal Revenue mailed to petitioners notices of deficiency for each of the tax years in question. He asserted, however, only the liability under § 6653(b) of the Code, 26 U. S. C. § 6653(b), for the addition to tax on account of fraud (the so-called fraud "penalty") of 50% of the underpayment in the basic tax. See App. 5a.

Petitioners sought redetermination in the United States Tax Court of the asserted deficiencies, contending that the Commissioner's action was barred by § 6501(a). They claimed that § 6501(c)(1) did not apply because the 1971 filing of nonfraudulent amended returns caused the general 3-year period of limitations specified in § 6501(a) to operate; the deficiency notices, having issued in November 1977, obviously were forthcoming only long after the expiration of three years from the date of filing of the nonfraudulent amended returns.

The Tax Court, in line with its then-recent decision in *Klemp* v. *Commissioner,* 77 T. C. 201 (1981), appeal pend-

ing, No. 81–7744 (CA9), agreed with petitioners.[3]    42 TCM 573 (1981), ¶ 81, 404 P-H Memo TC.

*No. 82–1509.*    Petitioner Deleet Merchandising Corp. filed timely corporation income tax returns for the calendar years 1967 and 1968.    The returns as so filed, however, did not report certain receipts derived by the taxpayer from its printing supply business.    On August 9, 1973, Deleet filed amended returns for 1967 and 1968 disclosing the receipts that had not been reported.[4]    Although the taxpayer corporation itself was not charged with criminal tax violations, and although no formal criminal investigation was initiated as to it, there were criminal and civil investigations that centered on certain former officers of the taxpayer.    After the completion of those investigations, the Commissioner, on December 14, 1979, issued a notice of deficiency to Deleet. App. 71a.    The notice asserted deficiencies in tax and additions under § 6653(b) for 1967 and 1968.

Deleet paid the alleged deficiencies and brought suit for their refund in the United States District Court for the District of New Jersey.    On its motion for summary judgment, Deleet contended that the Commissioner's action was barred by § 6501(a).    It claimed that no deficiencies or additions could be assessed more than three years after the amended returns were filed, regardless of whether the original returns were fraudulent.

---

[3] In *Klemp*, the Tax Court, in a reviewed decision with five judges dissenting on the issue, departed from its earlier holding in *Dowell* v. *Commissioner*, 68 T. C. 646 (1977), rev'd, 614 F. 2d 1263 (CA10 1980), cert. pending, No. 82–1873.

[4] Deleet asserts that the filing of its amended returns was voluntary. The taxpayer's correct tax liability has not yet been determined.    Although Deleet has not conceded that its original returns were fraudulent, both the District Court, App. to Pet. for Cert. in No. 82–1509, p. 4d, and the Court of Appeals, see 693 F. 2d 298, 299, n. 3 (CA3 1982), assumed, for purposes of Deleet's summary judgment motion hereinafter referred to, that they were.    We must make the same assumption here.

The District Court agreed and granted summary judgment for Deleet. 535 F. Supp. 402 (1981). It relied on the Tax Court's decision in *Klemp* v. *Commissioner, supra,* and on *Dowell* v. *Commissioner,* 614 F. 2d 1263 (CA10 1980), cert. pending, No. 82–1873.

*The Appeals.* The Government appealed each case to the United States Court of Appeals for the Third Circuit. The cases were heard and decided together. That court, by a 2-to-1 vote, reversed the decision of the Tax Court in *Badaracco* and the judgment of the District Court in *Deleet.* 693 F. 2d 298 (1982). The Third Circuit's ruling is consistent with the Fifth Circuit's holding in *Nesmith* v. *Commissioner,* 699 F. 2d 712 (1983), cert. pending, No. 82–2008. The Second Circuit has ruled otherwise. See *Britton* v. *United States,* 532 F. Supp. 275 (Vt. 1981), affirmance order, 697 F. 2d 288 (CA2 1982). See also *Espinoza* v. *Commissioner,* 78 T. C. 412 (1982).[5] Because of the conflict, we granted certiorari, 461 U. S. 925 (1983).

II

Our task here is to determine the proper construction of the statute of limitations Congress has written for tax assessments. This Court long ago pronounced the standard: "Statutes of limitation sought to be applied to bar rights of the Government, must receive a strict construction in favor of the Government." *E. I. du Pont de Nemours & Co.* v. *Davis,* 264 U. S. 456, 462 (1924). See also *Lucas* v. *Pilliod*

---

[5] The Tax Court, in cases concerning several of Deleet's officers, has followed its ruling in *Klemp, supra.* See *Kramer* v. *Commissioner,* 44 TCM 42 (1982), ¶ 82, 308 P-H Memo TC; *Elliott Liroff* v. *Commissioner,* 44 TCM 43 (1982), ¶ 82, 309 P-H Memo TC; *Derfel* v. *Commissioner,* 44 TCM 45 (1982), ¶ 82, 311 P-H Memo TC; *Richard B. Liroff* v. *Commissioner,* 44 TCM 47 (1982), ¶ 82, 312 P-H Memo TC. See also *Galvin* v. *Commissioner,* 45 TCM 221 (1982), ¶ 82, 689 P-H Memo TC.

*Lumber Co.*, 281 U. S. 245, 249 (1930). More recently, Judge Roney, in speaking for the former Fifth Circuit, has observed that "limitations statutes barring the collection of taxes otherwise due and unpaid are strictly construed in favor of the Government." *Lucia* v. *United States*, 474 F. 2d 565, 570 (1973).

We naturally turn first to the language of the statute. Section 6501(a) sets forth the general rule: a 3-year period of limitations on the assessment of tax. Section 6501(e)(1)(A) (first introduced as § 275(c) of the Revenue Act of 1934, 48 Stat. 745) provides an extended limitations period for the situation where the taxpayer's return nonfraudulently omits more than 25% of his gross income; in a situation of that kind, assessment now is permitted "at any time within 6 years after the return was filed."

Both the 3-year rule and the 6-year rule, however, explicitly are made inapplicable in circumstances covered by § 6501(c). This subsection identifies three situations in which the Commissioner is allowed an unlimited period within which to assess tax. Subsection (c)(1) relates to "a false or fraudulent return with the intent to evade tax" and provides that the tax then may be assessed "at any time." Subsection (c)(3) covers the case of a failure to file a return at all (whether or not due to fraud) and provides that an assessment then also may be made "at any time." Subsection (c)(2) sets forth a similar rule for the case of a "willful attempt in any manner to defeat or evade tax" other than income, estate, and gift taxes.[6]

All these provisions appear to be unambiguous on their face, and it therefore would seem to follow that the present cases are squarely controlled by the clear language of § 6501(c)(1). Petitioners Badaracco concede that they filed

---

[6] Subsections (c)(1) and (c)(3) appeared separately only upon the enactment of the 1954 Code. From 1921 until the 1954 Code, they were combined. See, *e. g.*, Revenue Act of 1921, § 250(d), 42 Stat. 265; Internal Revenue Code of 1939, § 276(a).

initial returns that were "false or fraudulent with the intent to evade tax." Petitioner Deleet, for present purposes, upon this review of its motion for summary judgment, is deemed to have filed false or fraudulent returns with the intent to evade tax. Section 6501(c)(1), with its unqualified language, then allows the tax to be assessed "at any time." Nothing is present in the statute that can be construed to suspend its operation in the light of a fraudulent filer's subsequent repentant conduct.[7] Neither is there anything in the wording of § 6501(a) that itself enables a taxpayer to reinstate the section's general 3-year limitations period by filing an amended return. Indeed, as this Court recently has noted, *Hillsboro National Bank* v. *Commissioner*, 460 U. S. 370, 378–380, n. 10 (1983), the Internal Revenue Code does not explicitly provide either for a taxpayer's filing, or for the Commissioner's acceptance, of an amended return; instead, an amended return is a creature of administrative origin and grace. Thus, when Congress provided for assessment at any time in the case of a false or fraudulent "return," it plainly included by this language a false or fraudulent *original* return. In this connection, we note that until the decision of the Tenth Circuit in *Dowell* v. *Commissioner*, 614 F. 2d 1263 (1980), cert. pending, No. 82–1873, courts consistently had held that the operation of § 6501 and its predecessors turned on the nature of the taxpayer's original, and not his amended, return.[8]

_____

[7] Under every general income tax statute since 1918, the filing of a false or fraudulent return has indefinitely extended the period of limitations for assessment of tax. See Revenue Act of 1918, § 250(d), 40 Stat. 1083; Revenue Act of 1921, § 250(d), 42 Stat. 265; Revenue Act of 1924, § 278(a), 43 Stat. 299; Revenue Act of 1926, § 278(a), 44 Stat., pt. 2, p. 59; Revenue Act of 1928, § 276(a), 45 Stat. 857; Revenue Act of 1932, § 276(a), 47 Stat. 238; Revenue Act of 1934, § 276(a), 48 Stat. 745; Revenue Act of 1936, § 276(a), 49 Stat. 1726; Revenue Act of 1938, § 276(a), 52 Stat. 540; Internal Revenue Code of 1939, § 276(a).

[8] The significance of the original, and not the amended, return has been stressed in other, but related, contexts. It thus has been held consistently that the filing of an amended return in a nonfraudulent situation does not

394

The substantive operation of the fraud provisions of the Code itself confirms the conclusion that § 6501(c)(1) permits assessment at any time in fraud cases regardless of a taxpayer's later repentance. It is established that a taxpayer who submits a fraudulent return does not purge the fraud by subsequent voluntary disclosure; the fraud was committed, and the offense completed, when the original return was prepared and filed. See, e. g., *United States* v. *Habig*, 390 U. S. 222 (1968); *Plunkett* v. *Commissioner*, 465 F. 2d 299, 302–303 (CA7 1972). "Any other result would make sport of the so-called fraud penalty. A taxpayer who had filed a fraudulent return would merely take his chances that the fraud would not be investigated or discovered, and then, if an investigation were made, would simply pay the tax which he owed anyhow and thereby nullify the fraud penalty." *George M. Still, Inc.* v. *Commissioner*, 19 T. C. 1072, 1077 (1953), aff'd, 218 F. 2d 639 (CA2 1955). In short, once a fraudulent return has been filed, the case remains one "of a false or fraudulent return," regardless of the taxpayer's later revised conduct, for purposes of criminal prosecution and civil fraud liability under § 6653(b). It likewise should remain such a case for purposes of the unlimited assessment period specified by § 6501(c)(1).

---

serve to extend the period within which the Commissioner may assess a deficiency. See, e. g., *Zellerbach Paper Co.* v. *Helvering*, 293 U. S. 172 (1934); *National Paper Products Co.* v. *Helvering*, 293 U. S. 183 (1934); *National Refining Co.* v. *Commissioner*, 1 B. T. A. 236 (1924). It also has been held that the filing of an amended return does not serve to reduce the period within which the Commissioner may assess taxes where the original return omitted enough income to trigger the operation of the extended limitations period provided by § 6501(e) or its predecessors. See, e. g., *Houston* v. *Commissioner*, 38 T. C. 486 (1962); *Goldring* v. *Commissioner*, 20 T. C. 79 (1953). And the period of limitations for filing a refund claim under the predecessor of § 6511(a) begins to run on the filing of the original, not the amended, return. *Kaltreider Construction, Inc.* v. *United States*, 303 F. 2d 366, 368 (CA3), cert. denied, 371 U. S. 877 (1962).

We are not persuaded by Deleet's suggestion, Brief for Petitioner in No. 82–1509, p. 15, that § 6501(c)(1) should be read merely to suspend the commencement of the limitations period while the fraud remains uncorrected.   The Tenth Circuit, in *Dowell* v. *Commissioner, supra,* made an observation to that effect, stating that the 3-year limitations period was "put in limbo" pending further taxpayer action.   614 F. 2d, at 1266.   The language of the statute, however, is contrary to this suggestion.   Section 6501(c)(1) does not "suspend" the operation of § 6501(a) until a fraudulent filer makes a voluntary disclosure.   Section 6501(c)(1) makes no reference at all to § 6501(a); it simply provides that the tax may be assessed "at any time."   And § 6501(a) itself contains no mechanism for its operation when a fraudulent filer repents.   By its very terms, it does not apply to a case, such as one of "a false or fraudulent return," that is "otherwise provided" for in § 6501. When Congress intends only a temporary suspension of the running of a limitations period, it knows how unambiguously to accomplish that result.   See, *e. g.,* §§ 6503(a)(1),   (a)(2), (b), (c), and (d).

The weakness of petitioners' proposed statutory construction is demonstrated further by its impact on § 6501(e)(1)(A), which provides an extended limitations period whenever a taxpayer's return nonfraudulently omits more than 25% of his gross income.

Under petitioners' reasoning, a taxpayer who *fraudulently* omits 25% of his gross income gains the benefit of the 3-year limitations period by filing an amended return.   Yet a taxpayer who *nonfraudulently* omits 25% of his gross income cannot gain that benefit by filing an amended return; instead, he must live with the 6-year period specified in § 6501(e)(1)(A).[9]   We agree with the conclusion of the Court of Ap-

---

[9] In both *Dowell* and *Klemp,* the Commissioner had issued his deficiency notices more than three years after the amended returns were filed but within the extended 6-year period after the original returns were

peals in the instant cases that Congress could not have intended to "create a situation in which persons who committed willful, deliberate fraud would be in a better position" than those who understated their income inadvertently and without fraud. 693 F. 2d, at 302.

We therefore conclude that the plain and unambiguous language of § 6501(c)(1) would permit the Commissioner to assess "at any time" the tax for a year in which the taxpayer has filed "a false or fraudulent return," despite any subsequent disclosure the taxpayer might make. Petitioners attempt to evade the consequences of this language by arguing that their original returns were "nullities." Alternatively, they urge a nonliteral construction of the statute based on considerations of policy and practicality. We now turn successively to those proposals.

## III

Petitioners argue that their original returns, to the extent they were fraudulent, were "nullities" for statute of limitations purposes. See Brief for Petitioners in No. 82–1453, pp. 22–27; Brief for Petitioner in No. 82–1509, pp. 32–34. Inasmuch as the original return is a nullity, it is said, the amended return is necessarily "the return" referred to in § 6501(a). And if that return is nonfraudulent, § 6501(c)(1) is inoperative and the normal 3-year limitations period applies. This nullity notion does not persuade us, for it is plain that "the return" referred to in § 6501(a) is the original, not the amended, return.

Petitioners do not contend that their fraudulent original returns were nullities for purposes of the Code generally. There are numerous provisions in the Code that relate to civil and criminal penalties for submitting or assisting in the preparation of false or fraudulent returns; their presence makes clear that a document which on its face plausibly purports to

---

filed. The courts in those cases nonetheless ruled the notices untimely. That result flows necessarily from petitioners' proposed statutory construction. It seems to us, however, to be unacceptably anomalous.

be in compliance, and which is signed by the taxpayer, is a return despite its inaccuracies. See, *e. g.*, §§ 7207, 6531(3), 6653(b). Neither do petitioners contend that their original returns were nullities for all purposes of § 6501. They contend, instead, that a fraudulent return is a nullity only for the limited purpose of applying § 6501(a). See Brief for Petitioners in No. 82–1453, p. 24; Brief for Petitioner in No. 82–1509, pp. 33–34. The word "return," however, appears no less than 64 times in § 6501. Surely, Congress cannot rationally be thought to have given that word one meaning in § 6501(a), and a totally different meaning in §§ 6501(b) through (q).

*Zellerbach Paper Co.* v. *Helvering*, 293 U. S. 172 (1934), which petitioners cite, affords no support for their argument. The Court in *Zellerbach* held that an original return, despite its inaccuracy, was a "return" for limitations purposes, so that the filing of an amended return did not start a new period of limitations running. In the instant cases, the original returns similarly purported to be returns, were sworn to as such, and appeared on their faces to constitute endeavors to satisfy the law. Although those returns, in fact, were not honest, the holding in *Zellerbach* does not render them nullities. To be sure, current Regulations, in several places, *e. g.*, Treas. Reg. §§ 301.6211–1(a), 301.6402–3(a), 1.451–1(a), and 1.461–1(a)(3)(i) (1983), do refer to an amended return, as does § 6213(g)(1) of the Code itself, 26 U. S. C. § 6213(g)(1) (1976 ed., Supp. V). None of these provisions, however, requires the filing of such a return. It does not follow from all this that an amended return becomes "the return" for purposes of § 6501(a).

We conclude, therefore, that nothing in the statutory language, the structure of the Code, or the decided cases supports the contention that a fraudulent return is a nullity for statute of limitations purposes.

## IV

Petitioners contend that a nonliteral reading should be accorded the statute on grounds of equity to the repentant

taxpayer and tax policy. "Once a taxpayer has provided the information upon which the Government may make a knowledgeable assessment, the justification for suspending the limitations period is no longer viable and must yield to the favored policy of limiting the Government's time to proceed against the taxpayer." Brief for Petitioner in No. 82–1509, p. 12. See also Brief for Petitioners in No. 82–1453, p. 17.

The cases before us, however, concern the construction of existing statutes. The relevant question is not whether, as an abstract matter, the rule advocated by petitioners accords with good policy. The question we must consider is whether the policy petitioners favor is that which Congress effectuated by its enactment of § 6501. Courts are not authorized to rewrite a statute because they might deem its effects susceptible of improvement. See *TVA* v. *Hill*, 437 U. S. 153, 194–195 (1978). This is especially so when courts construe a statute of limitations, which "must receive a strict construction in favor of the Government." *E. I. du Pont de Nemours & Co.* v. *Davis*, 264 U. S., at 462.

We conclude that, even were we free to do so, there is no need to twist § 6501(c)(1) beyond the contours of its plain and unambiguous language in order to comport with good policy, for substantial policy considerations support its literal language. First, fraud cases ordinarily are more difficult to investigate than cases marked for routine tax audits. Where fraud has been practiced, there is a distinct possibility that the taxpayer's underlying records will have been falsified or even destroyed. The filing of an amended return, then, may not diminish the amount of effort required to verify the correct tax liability. Even though the amended return proves to be an honest one, its filing does not necessarily "remov[e] the Commissioner from the disadvantageous position in which he was originally placed." Brief for Petitioners in No. 82–1453, p. 12.

Second, the filing of a document styled "amended return" does not fundamentally change the nature of a tax fraud investigation. An amended return, however accurate it ulti-

mately may prove to be, comes with no greater guarantee of trustworthiness than any other submission. It comes carrying no special or significant imprimatur; instead, it comes from a taxpayer who already has made false statements under penalty of perjury. A responsible examiner cannot accept the information furnished on an amended return as a substitute for a thorough investigation into the existence of fraud. We see no "tax policy" justification for holding that an amended return has the singular effect of shortening the unlimited assessment period specified in §§ 6501(c)(1) to the usual three years. Fraud cases differ from other civil tax cases in that it is the Commissioner who has the burden of proof on the issue of fraud. See § 7454(a) of the Code, 26 U. S. C. § 7454(a). An amended return, of course, may constitute an admission of substantial underpayment, but it will not ordinarily constitute an admission of fraud. And the three years may not be enough time for the Commissioner to prove fraudulent intent.

Third, the difficulties that attend a civil fraud investigation are compounded where, as in No. 82–1453, the Commissioner's initial findings lead him to conclude that the case should be referred to the Department of Justice for criminal prosecution. The period of limitations for prosecuting criminal tax fraud is generally six years. See § 6531. Once a criminal referral has been made, the Commissioner is under well-known restraints on the civil side and often will find it difficult to complete his civil investigation within the normal 3-year period; the taxpayer's filing of an amended return will not make any difference in this respect. See *United States* v. *La-Salle National Bank*, 437 U. S. 298, 311–313 (1978); see also Tax Equity and Fiscal Responsibility Act of 1982, Pub. L. 97–248, § 333(a), 96 Stat. 622. As a practical matter, therefore, the Commissioner frequently is forced to place a civil audit in abeyance when a criminal prosecution is recommended.[10]

---

[10] Petitioners contend that these policy considerations favorable to the Commissioner do not apply on the facts of petitioners' cases. Brief for

We do not find petitioners' complaint of "unfair treatment" persuasive. Petitioners claim that it is unfair "to forever suspend a Sword of Damocles over a taxpayer who at one time may have filed a fraudulent return, but who has subsequently recanted and filed an amended return providing the Government with all the information necessary to properly assess the tax." Brief for Petitioner in No. 82–1509, p. 26. See Brief for Petitioners in No. 82–1453, p. 16. But it seems to us that a taxpayer who has filed a fraudulent return with intent to evade tax hardly is in a position to complain of the fairness of a rule that facilitates the Commissioner's collection of the tax due. A taxpayer who has been the subject of a tax fraud investigation is not likely to be surprised when a notice of deficiency arrives, even if it does not arrive promptly after he files an amended return.

Neither are we persuaded by Deleet's argument that a literal reading of the statute "punishes" the taxpayer who repentantly files an amended return. See Brief for Petitioner in No. 82–1509, p. 44. The amended return does not change the status of the taxpayer; he is left in precisely the same position he was in before. It might be argued that Congress should provide incentives to taxpayers to disclose their fraud voluntarily. Congress, however, has not done so in § 6501. That legislative judgment is controlling here.

## V

Petitioners contend, finally, that a literal reading of § 6501(c) produces a disparity in treatment between a taxpayer who in the first instance files a fraudulent return and one who fraudulently fails to file any return at all. This, it is said, would elevate one form of tax fraud over another.

---

Petitioners in No. 82–1453, pp. 33–34; Brief for Petitioner in No. 82–1509, pp. 35–36. This assertion is irrelevant, for the cases involve construction of a statute of limitations, not a question of laches, a defense to which the Government usually is not subject. See *United States* v. *Summerlin*, 310 U. S. 414, 416 (1940).

The argument centers in § 6501(c)(3), which provides that in a case of failure to file a return, the tax may be assessed "at any time." It is settled that this section ceases to apply once a return has been filed for a particular year, regardless of whether that return is filed late and even though the failure to file a timely return in the first instance was due to fraud. See *Bennett* v. *Commissioner*, 30 T. C. 114 (1958), acq., 1958–2 Cum. Bull. 3. See also Rev. Rul. 79–178, 1979–1 Cum. Bull. 435. This, however, does not mean that § 6501 should be read to produce the same result in each of the two situations. From the language employed in the respective subsections of § 6501, we conclude that Congress intended different limitations results. Section 6501(c)(3) applies to a "failure to file a return." It makes no reference to a failure to file a timely return (cf. §§ 6651(a)(1) and 7203), nor does it speak of a fraudulent failure to file. The section literally becomes inapplicable once a return has been filed. Section 6501(c)(1), in contrast, applies in the case of "a false or fraudulent return." The fact that a fraudulent filer subsequently submits an amended return does not make the case any less one of a false or fraudulent return. Thus, although there may be some initial superficial plausibility to this argument on the part of petitioners, we conclude that the argument cannot prevail. If the result contended for by petitioners is to be the rule, Congress must make it so in clear and unmistakable language.[11]

The judgment of the Court of Appeals in each of these cases is affirmed.

*It is so ordered.*

JUSTICE STEVENS, dissenting.

The plain language of § 6501(c)(1) of the Internal Revenue Code conveys a different message to me than it does to the

---

[11] See generally Brennan, The Uncertain Status of Amended Tax Returns, 7 Rev. of Taxation of Individuals 235, 252–264 (1983).

Court. That language is clear enough: "In the case of a false or fraudulent return with the intent to evade tax, the tax may be assessed, or a proceeding in court for collection of such tax may be begun without assessment, at any time." 26 U. S. C. § 6501(c)(1). What is not clear to me is why this is a case of "a false or fraudulent return."

In both cases before the Court, the Commissioner assessed deficiencies based on concededly nonfraudulent returns. The taxpayers' alleged prior fraud was not the basis for the Commissioner's action. Indeed, whether or not the Commissioner was obligated to accept petitioners' amended returns, he in fact elected to do so and to use them as the basis for his assessment.[1] When the Commissioner initiates a deficiency proceeding on the basis of a nonfraudulent return, I do not believe that the resulting case is one "of a false or fraudulent return."

The purpose of the statute supports this reading. The original version of § 6501(c) was enacted in 1921. It was true in 1921, as it is today, that the fraudulent concealment of the facts giving rise to a claim tolled the controlling statute of limitations until full disclosure was made. Fraud did not entirely repeal the bar of limitations; rather the period of limitations simply did not begin to run until the fraud was discovered, or at least discoverable. See, e. g., *Exploration Co.* v. *United States*, 247 U. S. 435 (1918). Moreover, this Court soon ruled that if a return constitutes an honest and genuine attempt to satisfy the law, it is sufficient to commence the running of the statute of limitations. *Zellerbach Paper Co.* v. *Helvering*, 293 U. S. 172 (1934).[2] The Court has subsequently adhered to this position. See *Commissioner* v.

---

[1] Applicable regulations indicate that the amended returns filed by petitioners must be the basis for his assessment. See Treas. Reg. § 301.6211–1(a), 26 CFR § 301.6211–1(a) (1983).

[2] See also *Florsheim Bros. Co.* v. *United States*, 280 U. S. 453, 462 (1930).

*Lane-Wells Co.*, 321 U. S. 219 (1944); *Germantown Trust Co.* v. *Commissioner*, 309 U. S. 304 (1940). For example, the Court has construed another portion of the statute, dealing with underreporting of income, as inapplicable to returns which disclose the facts forming the basis for the deficiency.

> "We think that in enacting [the statute] Congress manifested no broader purpose than to give the Commissioner an additional two years to investigate tax returns in cases where, because of a taxpayer's omission to report some taxable item, the Commissioner is at a special disadvantage in detecting errors. In such instances the return on its face provides no clue as to the existence of the omitted item. On the other hand, when, as here, the understatement of a tax arises from an error in reporting an item disclosed on the face of the return the Commissioner is at no such disadvantage." *Colony, Inc.* v. *Commissioner*, 357 U. S. 28, 36 (1958).

In light of the purposes and common-law background of the statute, as well as this Court's previous treatment of what a "return" sufficient to commence the running of the limitations period is, it seems apparent that an assessment based on a nonfraudulent amended return does not fall within § 6501(c)(1). Once the amended return is filed the rationale for disregarding the limitations period is absent. The period of concealment is over, and under general common-law principles the limitations period should begin to run.[3] The filing of the return means that the Commissioner is no longer under any disadvantage; full disclosure has been made and there is no reason why he cannot assess a deficiency within the statutory period.

---

[3] It is axiomatic that statutes in derogation of the common law should be narrowly construed, as the Court pointed out earlier this Term. See *Norfolk Redevelopment & Housing Authority* v. *Chesapeake & Potomac Tel. Co., ante,* at 35–36.

404

The 1921 statute read as follows:

> "[I]n the case of a false or fraudulent return with intent to evade tax, or of a failure to file a required return, the amount of tax due may be determined, assessed, and collected, and a suit or proceeding for the collection of such amount may be begun, at any time after it becomes due." Revenue Act of 1921, § 250(d), 42 Stat. 265.

Under this statute, the filing of a fraudulent return had no greater effect on the limitations period than the filing of no return at all. In either case, since the relevant facts had not been disclosed to the Commissioner, the proper tax could be assessed "at any time." In 1954 the statute was bifurcated; the provisions relating to a failure to file were placed into § 6501(c)(3).[4] The legislative history of this revision indicates that the division was not intended to change the statute's meaning.[5] This history supports petitioners' reading of the statute. Fraudulent returns were treated the same as no return at all since neither gives the Commissioner an adequate basis to attempt an assessment. Once that basis is provided, however, the statute is inapplicable; it is no longer a "case of a false or fraudulent return."

The Commissioner practically concedes as much since he agrees with the ruling in *Bennett* v. *Commissioner*, 30 T. C. 114 (1958), acq., 1958–2 Cum. Bull. 3, that if the taxpayer fraudulently fails to file a return, the limitations period nevertheless begins to run once a nonfraudulent return is filed. See also Rev. Rul. 79–178, 1979–1 Cum. Bull. 435. Yet there is nothing in the history of this statute indicating that Congress intended a bifurcated reading of a simple statutory command. There is certainly no logical reason supporting such a result; the Commissioner is if anything under

---

[4] "In the case of failure to file a return, the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time." 26 U. S. C. § 6501(c)(3).

[5] See S. Rep. No. 1622, 83d Cong., 2d Sess., 583–585 (1954); H. R. Rep. No. 1337, 83d Cong., 2d Sess., A413–A414 (1954).

a greater disadvantage when the taxpayer originally filed no return at all, since at least in the (c)(1) situation the Commissioner can compare the two returns. If the Commissioner can assess a deficiency within three years when no return was previously filed, he can do the same if the original return was fraudulent.[6]

Whatever the correct standard for construing a statute of limitations when it operates against the Government, see *ante*, at 391–392, surely the presumption ought to be that *some* limitations period is applicable.

> "It probably would be all but intolerable, at least Congress has regarded it as ill-advised, to have an income tax system under which there never would come a day of final settlement and which required both the taxpayer and the Government to stand ready forever and a day to produce vouchers, prove events, establish values and recall details of all that goes into an income tax contest. Hence, a statute of limitation is an almost indispensable

---

[6] The Court attempts to justify its position by reference to § 6501(e) (1)(A), which provides a 6-year limitations period for a taxpayer who nonfraudulently omits more than 25% of his or her gross income, noting that the taxpayer cannot escape this extended period by filing an amended return. *Ante*, at 395–396. However, this Court has never so held; the majority justifies its position only by assuming its conclusion as to the correct construction of § 6501(e)(1)(A), an issue not before the Court. The Court cites only two old Tax Court decisions neither of which considers the arguments advanced by petitioners here. See *Houston* v. *Commissioner*, 38 T. C. 486 (1962); *Goldring* v. *Commissioner*, 20 T. C. 79 (1953). Moreover, it is incorrect that the taxpayer who files a fraudulent return is in a better position than the taxpayer who innocently understates his income by more than 25%, since the former is subject to criminal penalties under a 6-year statute of limitations. See 26 U. S. C. § 6531. He is also subject to a 50% penalty. See 26 U. S. C. § 6653(b). Thus, both taxpayers face the same limitations period, though the sanctions faced by the former are much more severe. Finally, the Commissioner is in no position to rely on a disparity of treatment between two separate parts of the statute, §§ 6501(c)(1) and 6501(e)(1)(A), since he is willing to tolerate disparate treatment between (c)(1) and (c)(3), which have the same statutory origin and purpose.

element of fairness as well as of practical administration of an income tax policy." *Rothensies* v. *Electric Storage Battery Co.*, 329 U. S. 296, 301 (1946).

However, under the Commissioner's position, adopted by the Court today, no limitations period will *ever* apply to the Commissioner's actions, despite petitioners' attempts to provide him with all the information necessary to make a timely assessment.

> "Respondent would leave the statute open for that portion of eternity concurrent with the taxpayer's life, whether he lives 3 score and 10 or as long as Methuselah. In most religions, one can repent and be saved, but in the peculiar tax theology of respondent, no act of contrition will suffice to prevent the statute from running in perpetuity. Merely to state the proposition is to refute it, unless some very compelling reasons of policy require visiting this absurdity on the taxpayer." *Klemp* v. *Commissioner*, 77 T. C. 201, 207 (1981) (Wilbur, J., concurring).[7]

If anything, considerations of tax policy argue against the result reached by the Court today. In a system based on voluntary compliance, it is crucial that some incentive be given to persons to reveal and correct past fraud. Yet the rule announced by the Court today creates no such incentive; a taxpayer gets no advantage at all by filing an honest return. Not only does the taxpayer fail to gain the benefit of a limitations period, but at the same time he gives the Commissioner additional information which can be used against him at any time. Since the amended return will not give the taxpayer a defense in a criminal or civil fraud action, see *ante*, at 394,

---

[7] Even Judge Wilbur's estimation of the sweep of the Commissioner's position may be too modest, for under § 6901(c)(1) the Commissioner is entitled to assess deficiencies against a taxpayer's beneficiaries after his or her death for one year after the limitations period runs. Since the limitations period will never run, the Commissioner may presumably hound a taxpayer's beneficiaries and their descendants in perpetuity.

there is no reason at all for a taxpayer to correct a fraudulent return.   Apparently the Court believes that taxpayers should be advised to remain silent, hoping the fraud will go undetected, rather than to make full disclosure in a proper return.   I cannot believe that Congress intended such a result.[8]
   I respectfully dissent.

---

[8] The Court also argues that the Commissioner cannot be expected to comply with a limitations period since his civil investigation will be hampered if he has referred the fraud case to the Department of Justice for criminal prosecution.   *Ante*, at 399.   If that is the problem, however, then in an appropriate case the limitations period could be tolled during the pendency of the criminal investigation.   Tolling during periods in which an action could not reasonably have been brought is much more in accord with usual limitations principles than the result the Court reaches today.   Additionally, the conflicting demands of dual civil and criminal investigations are evidently no obstacle to the Commissioner in the fraudulent-failure-to-file context, since the Commissioner there is able to live with a 3-year limitations period.   In any event, the need to conduct criminal investigations, which in all events must end or result in an indictment within six years, does not justify the power to assess deficiencies in perpetuity, and even in cases, such as No. 82–1509, where no reference to the Department of Justice is ever made.