T.C. Memo. 2004-128


UNITED STATES TAX COURT


JOHN MARRETTA, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 2289-03.                    Filed May 27, 2004.


R determined that P was liable for penalties pursuant to sec. 6663, I.R.C., for the 1992, 1993, and 1994 tax years. During those years, P received distributions from a so-called Ponzi scheme. P did not report as income the amount of the distributions. P pleaded guilty to violating sec. 7201, I.R.C., for his failure to declare the amount of the distributions he received from the scheme in 1994. During P's plea hearing, he admitted (1) that he failed to report as income the distributions he received from the scheme in 1992, 1993, and 1994, (2) that the distributions were taxable income, and (3) that, when he filed his 1992, 1993, and 1994 Federal income tax returns without reporting the distributions as income, he acted voluntarily with the specific intent to violate a known legal duty.

<u>Held</u>: Because P pleaded guilty to an attempt to evade or defeat tax pursuant to sec. 7201, I.R.C., for 1994, P is estopped from challenging R's determination

that the distributions were taxable income and that he filed a false and fraudulent Federal income tax return with the intent to evade income tax for the 1994 tax year.

Held, further, R's determination that P is liable for penalties pursuant to sec. 6663, I.R.C., for the 1992, 1993, and 1994 tax years is sustained.

Robert Kenny, for petitioner.

Robert W. Mopsick, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

NIMS, Judge: Respondent determined penalties pursuant to section 6663 for taxable years 1992, 1993, and 1994 of $6,347, $22,350, and $28,454, respectively. In the alternative, respondent determined that petitioner is liable for accuracy-related penalties pursuant to section 6662(a).

Unless otherwise indicated, all section references are to sections of the Internal Revenue Code in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulations of the parties, with accompanying exhibits, are

incorporated herein by this reference. At the time the petition was filed in this case, petitioner resided in Lavallette, New Jersey.

In November 1991, petitioner became an investor in CNC Trading Company of Marlton, New Jersey (CNC). CNC was owned and primarily operated by Charles N. Cugliari (Cugliari). CNC was purportedly a food broker and distributor. Cugliari and CNC salespeople sold "investments" in CNC "contracts" for approximately $25,000 each. Contracts were also sold in half shares for approximately $12,500 each. Cugliari and CNC salespeople told investors who purchased contracts that CNC used their money to purchase food products each month for subsequent sale to food wholesalers and supermarket chains. CNC had approximately 2,800 investors.

CNC sent cash or checks to its investors consisting of a fixed amount of money each month that was represented to be half of the profits made by CNC on its sales of food products. Unless an investor specified otherwise, CNC would retain the investor's principal investment and continue paying that investor monthly cash or checks. An investor could obtain the investor's principal investment back from CNC upon request.

CNC was operated so as to permit investors to evade the payment of Federal income tax on the income they received from CNC. CNC did not report to the Internal Revenue Service (IRS)

the income CNC paid to its investors. CNC also accepted cash payments from some of its investors. Some investors, not including petitioner, received cash, rather than checks, on a monthly basis. Petitioner only received checks from CNC. CNC did not issue a Form 1099 to petitioner for any of the years at issue.

Included with the monthly checks petitioner received from CNC were "vouchers" indicating: (1) The amount of the investment; (2) a "realization" amount; (3) a "margin" (gain) amount; (4) petitioner's "share" of the margin amount; and (5) the amount "reinvested" (uniformly it was the amount of the original investment). Petitioner did not reveal these vouchers or their content to his return preparer.

CNC was, in reality, a so-called Ponzi scheme. Instead of purchasing food products with the money CNC received from investors, CNC used that money to pay out cash or checks on a monthly basis to earlier investors. CNC closed in February 1995 when Cugliari fled to the Cayman Islands.

In November 1991, petitioner made his first investment in a CNC contract. From that date to January 1995, petitioner invested in another 10 CNC contracts. As of January 1995, petitioner had invested a total of $250,657 in CNC contracts.

Petitioner received a total of $280,932 from CNC from November 1991 through January 1995. Respondent does not allege that petitioner was either a promoter or a salesperson for CNC.

On or about April 15, 1993, petitioner submitted for filing with the IRS a 1992 Federal income tax return. On that return, petitioner reported $30,853 in total income, on which he paid $2,237 in Federal income tax. On petitioner's 1992 return, petitioner did not report as income the amount of any CNC check received by him.

On or about March 7, 1994, petitioner submitted for filing with the IRS a 1993 Federal income tax return. On that return, petitioner reported $36,470 in total income, on which he paid $4,640 in Federal income tax. On petitioner's 1993 return, petitioner did not report as income the amount of any CNC check received by him.

On or about March 28, 1995, petitioner submitted for filing with the IRS a 1994 Federal income tax return. On that return, petitioner reported $44,601 in total income, on which he paid $7,884 in Federal income tax. On petitioner's 1994 return, petitioner did not report as income the amount of any CNC check received by him.

Subsequent to the filing of petitioner's aforementioned Federal income tax returns for 1992, 1993, and 1994, petitioner submitted for filing with the IRS amended tax returns for the

1992, 1993, and 1994 tax years. The understatements of tax, calculated before the application of net operating losses, as shown on the amended tax returns for the 1992, 1993, and 1994 tax years, are $870, $2,813, and $3,580, respectively.

Petitioner has subsequently submitted to the IRS second amended tax returns for the 1992 and 1993 tax years. The IRS has not as yet determined whether to accept these second amended returns. The parties stipulated that these second amended returns would have the effect of withdrawing the first amended returns and reinstating petitioner's returns as originally filed, showing no understatements of tax for the 1992 and 1993 tax years.

Petitioner pleaded guilty to violating section 7201 for his failure to declare $127,512 of income earned in 1994 from CNC. At petitioner's plea hearing, petitioner admitted: (1) At the time he filed his 1992 Federal income tax return, he knew that he had received approximately $41,600 in total "monthly profit income" on his CNC investments in 1992; (2) he failed to report this income on his 1992 return so that he would not have to pay income tax on that amount; (3) the "tax loss" on the unreported income was approximately $7,597; (4) at the time he filed his 1993 Federal income tax return, he knew that he had received approximately $109,663 in total monthly profit income on his CNC investments in 1993; (5) he failed to report this income on his

1993 return so that he would not have to pay income tax on that amount; (6) the tax loss on the unreported income was approximately $26,959; (7) at the time he filed his 1994 Federal income tax return, he knew that he had received approximately $127,509 in total monthly profit income on his CNC investments in 1994; (8) he failed to report this income on his 1994 return so that he would not have to pay income tax on that amount; (9) the tax loss on the unreported income was approximately $34,761; and (10) in attempting to evade the additional taxes, he acted willfully; that is, he acted voluntarily with the specific intent to violate a known legal duty.

According to an affidavit submitted by a special agent with the Criminal Investigation Division of the IRS for the purpose of calculating petitioner's offense level under the Sentencing Guidelines, the IRS followed the definition of "'tax loss' contained at U.S.S.G. §2T1.1(c)(1)(A)." The affidavit goes on to say that "That subsection of the Sentencing Guidelines states that the tax loss 'shall be treated as 28% of the unreported gross income * * * unless a more accurate determination of the tax loss can be made.'"

## OPINION

Respondent bears the burden of proving fraud by clear and convincing evidence. Sec. 7454(a); Rule 142(b); Sadler v. Commissioner, 113 T.C. 99, 102 (1999). To satisfy this burden,

respondent must show: (1) An underpayment exists; and (2) petitioner intended to evade taxes known to be owing by conduct intended to conceal, mislead, or otherwise prevent the collection of taxes. Sadler v. Commissioner, supra at 102. "Where fraud is determined for each of several years, respondent's burden applies separately for each of the years." Temple v. Commissioner, T.C. Memo. 2000-337, affd. 62 Fed. Appx. 605 (6th Cir. 2003). If respondent establishes that some portion of the underpayment is attributable to fraud, the entire underpayment shall be treated as attributable to fraud, except with respect to any portion of the underpayment that the taxpayer establishes is not attributable to fraud. Sec. 6663(b).

## I.   The 1994 Tax Year

Respondent asserts that petitioner's conviction for an attempt to evade or defeat tax under section 7201 collaterally estops him from challenging respondent's determination that petitioner is liable for civil fraud penalties under section 6663 for the 1994 tax year. A conviction for an attempt to evade or defeat tax pursuant to section 7201, either upon a guilty plea or upon a jury verdict, conclusively establishes fraud in a subsequent civil tax fraud proceeding through the application of the doctrine of collateral estoppel. DiLeo v. Commissioner, 96 T.C. 858, 885 (1991), affd. 959 F.2d 16 (2d Cir. 1992); Frey v. Commissioner, T.C. Memo. 1998-226.

Petitioner pleaded guilty to an attempt to evade or defeat tax pursuant to section 7201 for 1994.  Accordingly, petitioner is estopped from challenging respondent's determination that there is an underpayment for the 1994 tax year and that he filed a false and fraudulent Federal income tax return with the intent to evade income tax for the 1994 tax year.

Respondent has thus carried his burden of proving that there was an underpayment of tax, some part of which was due to fraud, and, therefore, the entire underpayment is attributable to fraud, "except with respect to any portion of the underpayment which the taxpayer establishes (by a preponderance of the evidence) is not attributable to fraud."  Sec. 6663(b).  Since petitioner has not introduced cogent evidence to support his claims that the underpayment is less than that determined by respondent or that the entire underpayment is not attributable to fraud, we sustain respondent's determination that petitioner is liable for penalties for fraud under section 6663 for the 1994 tax year.

II.  The 1992 and 1993 Tax Years

A.  Underpayment

Respondent claims that the distributions received by petitioner from CNC are unreported ordinary income for which there was an underpayment of tax.  Petitioner claims that the

distributions received by petitioner from CNC represent a return of capital that is not taxable because CNC had no earnings and profits.  See secs. 301, 316.

Petitioner pleaded guilty to violating section 7201 for his failure to declare $127,512 of income earned in 1994 from CNC. At petitioner's plea hearing, petitioner admitted:  (1) At the time he filed his 1992 Federal income tax return, he knew that he had received approximately $41,600 in total monthly profit income on his CNC investments in 1992; (2) the tax loss on the unreported income was approximately $7,597; (3) at the time he filed his 1993 Federal income tax return, he knew that he had received approximately $109,663 in total monthly profit income on his CNC investments in 1993; and (4) the tax loss on the unreported income was approximately $26,959.  Thus, petitioner admitted that he received unreported income and that the nondisclosure resulted in an underpayment.

Petitioner also submitted amended Federal income tax returns for the 1992 and 1993 tax years.  On those returns, which petitioner signed under penalties of perjury, petitioner included in income the amount of the distributions that he had received from CNC during 1992 and 1993.  Petitioner's amended returns are admissions of Federal income tax underpayments.  See Badaracco v. Commissioner, 464 U.S. 386, 399 (1984).

Accordingly, we are convinced that respondent has proven by clear and convincing evidence that an underpayment exists for the 1992 and 1993 tax years.

Respondent has thus carried his burden of proving that there was an underpayment of tax for the 1992 and 1993 tax years. Petitioner has not introduced cogent evidence to support his claim that the underpayment is less than that determined by respondent. In particular, petitioner has not introduced sufficient evidence to support his claim that the CNC distributions he received in 1992 and 1993 were a return of capital.

B.  Intent To Defraud

As stated above, the Commissioner bears the burden of proving fraud by clear and convincing evidence. Fraud is the intentional wrongdoing on the part of a taxpayer to evade a tax believed to be owing. Sadler v. Commissioner, 113 T.C. at 102; DiLeo v. Commissioner, supra at 874. Whether petitioner's underpayments of tax for 1992 and 1993 were due to fraud is a question of fact that must be considered based on an examination of the entire record and petitioner's entire course of conduct. See DiLeo v. Commissioner, supra at 874. Fraud may be proved by circumstantial evidence. Id. No single factor is necessarily dispositive, but a combination of several factors is persuasive circumstantial evidence of fraud. Petzoldt v. Commissioner, 92

T.C. 661, 700 (1989).  A pattern of consistent underreporting of income, particularly when accompanied by other circumstances exhibiting an intent to conceal, justifies the inference of fraud.  Parks v. Commissioner, 94 T.C. 654, 664 (1990).

Respondent argues that the following factors or "badges" of fraud are present in this case:  (1) Admission of fraud by the taxpayer; (2) concealing income from a taxpayer's tax return preparer; and (3) engaging in a pattern of behavior that indicates an intent to mislead or conceal.  See Bradford v. Commissioner, 796 F.2d 303, 307 (9th Cir. 1986), affg. T.C. Memo. 1984-601; Parks v. Commissioner, supra at 664-665.

As stated above, at petitioner's plea hearing, petitioner admitted:  (1) At the time he filed his 1992 Federal income tax return, he knew that he had received approximately $41,600 in total monthly profit income on his CNC investments in 1992; (2) he failed to report this income on his 1992 return so that he would not have to pay income tax on that amount; (3) at the time he filed his 1993 Federal income tax return, he knew that he had received approximately $109,663 in total monthly profit income on his CNC investments in 1993; (4) he failed to report this income on his 1993 return so that he would not have to pay income tax on that amount; (5) at the time he filed his 1994 Federal income tax return, he knew that he had received approximately $127,509 in total monthly profit income on his CNC investments in 1994; (6)

he failed to report this income on his 1994 return so that he would not have to pay income tax on that amount; and (7) in attempting to evade the additional taxes, he acted willfully; that is, he acted voluntarily with the specific intent to violate a known legal duty. Thus, petitioner admitted to consistently underreporting income with the intent to violate his duty to pay taxes due and owing.

Additionally, petitioner failed to inform his tax return preparer of the distributions that he received from CNC. Petitioner claims that he did not discuss his CNC investments or the distributions that he received from CNC with his tax return preparer because CNC did not issue a Form 1099 to petitioner for any of the years at issue. Petitioner testified that rather than inform his return preparer of the distributions from CNC and raise the issue of the missing Forms 1099, petitioner chose to conceal his CNC investments and distributions from his tax return preparer. Petitioner admitted at trial that he also failed to provide to his tax return preparer the "vouchers" that he received from CNC, even though they purported to show the amount of profit petitioner earned from his investments with CNC.

Although we do not find petitioner's explanation of his behavior to be, for the most part, credible, we do accept petitioner's claims that he cooperated with the agents during the investigation and made no effort to hide or conceal anything

during the investigation.  Additionally, petitioner did not conduct his dealings with CNC in cash.  These factors might mitigate against a finding of fraud were it not for the more compelling factors establishing fraud outlined above.

Therefore, we conclude that respondent has clearly and convincingly proven that at least some portion of the underpayment of tax for the 1992 and 1993 tax years was due to fraud.  Most revealing in this regard are the admissions petitioner made during his plea hearing.  Petitioner has not introduced cogent evidence to support his claim that the entire underpayment is not attributable to fraud.  Therefore, we sustain respondent's determination that petitioner is liable for penalties for fraud under section 6663 for the 1992 and 1993 tax years.

III.  Conclusion

Based on the foregoing, we hold that petitioner is liable for penalties for fraud under section 6663 for the years at issue.  Because section 6663 applies, we need not address respondent's alternative argument under section 6662(a).

We have considered all of the contentions and arguments of the parties that are not discussed herein, and we find them to be without merit, irrelevant, or moot.

To reflect the foregoing,

<u>Decision will be entered for respondent</u>.