MERRITT, J., delivered the opinion of the court in which GIBBONS, J., joined. GIBBONS, J. (pp. 678-80), delivered a separate concurring opinion.
McKEAGUE, J. (pp. 680-85), delivered a dissenting opinion.
OPINION
MERRITT, Circuit Judge.
Beth Ann Kelly died after receiving a fatal dose of fentanyl. Her estate subsequently brought this lawsuit alleging that the defendant’s fentanyl patch caused Kelly’s death. The defendant pleaded immunity under a Michigan statute that immunizes manufacturers of “drugs” from suit. The district court determined that the fen-tanyl patch was a “drug” and consequently granted the defendant’s motion to dismiss the complaint. We conclude that the district court’s analysis was incomplete and that a factual question remains as to whether the fentanyl patch was a “combination product,” the manufacturers of which do not enjoy immunity under Michigan law. We therefore reverse the judgment of the district court and remand for further proceedings.
I. Background
Defendant Mylan is the manufacturer of a fentanyl patch that is the generic version of Duragesic. The product is intended to treat pain. It essentially has two parts: fentanyl (its active ingredient) and a “transdermal system” (i.e., the patch that delivers the drug). The patch is affixed to the patient’s skin and is designed to deliver a regulated dose of fentanyl to the patient for a prolonged period. According to the complaint, the defendant’s patch caused Kelly’s death by delivering an excessive amount of fentanyl.
Kelly’s estate brought suit in Michigan state court, alleging counts based on common law and statutory torts, i.e., strict products liability, negligence, negligent misrepresentation, fraud, warranty, and the Michigan Consumer Protection Act. The defendant removed the case to federal court and subsequently moved to dismiss the complaint for failure to state a claim *676 upon which relief can be granted. As is relevant here, the defendant based its motion on Mich. Comp. Laws § 600.2946(5), which provides that manufacturers of “drugs” are immune from suit. The district court concluded that the fentanyl patch is a “drug” and dismissed the complaint in its entirety. The correctness of this conclusion is the sole issue on appeal.[1]
II. Analysis
Mich. Comp. Laws § 600.2946(5) grants immunity from suit to drug manufacturers. In pertinent part, the statute reads:
In a product liability action against’ a manufacturer or seller, a product that is a drug is not defective or unreasonably dangerous, and the manufacturer or seller is not liable, if the drug was approved for safety and efficacy by the United States food and drug administration, and the drug and its labeling were in compliance with the United States food and drug administration’s approval at the time the drug left the control of the manufacturer or seller.
As the statute plainly states, a manufacturer is immune only if the product at issue is a “drug.” Michigan defines “drug” as the term is defined in federal law: “ ‘Drug’ means that term as defined in section 201 of the federal food, drug, and cosmetic act, chapter 675, 52 Stat. 1040, 21 U.S.C. 321.” Mich. Comp. Laws § 600.2945(b). In turn, the federal Act defines “drug” to mean:
(A) articles recognized in the official United States Pharmacopoeia, official Homoeopathic Pharmacopoeia of the United States, or official National For-mulary, or any supplement to any of them; and (B) articles intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease in man or other animals; and (C) articles (other than food) intended to affect the structure or any function of the body of man or other animals; and (D) articles intended for use as a component of any article specified in clause (A), (B), or (C).
21 U.S.C. § 321(g)(1). Michigan’s definition of “drug” also provides that a “drug” is not a “medical appliance or device,” though the statute neither defines “medical appliance or device” nor refers to the federal definition of “device.”[2] Mich. Comp. Laws § 600.2945(b).
Before the district court, the plaintiff argued that the patch is not a drug even if fentanyl, the product’s active ingredient, is. The district court disagreed, holding that “there is no factual or legal basis to disassociate the pharmacologically active *677 and inactive components of the [fentanyl patch],” and that the fentanyl patch, “including all its system components, is an FDA-approved drug.” The court determined that the patch was akin to a time-release capsule in a pill and that it qualified as an “article intended for use as a component of any article specified in clause (A), (B), or (C).”
The district court’s conclusion is problematic for two reasons. First, it is unclear that the patch is an “article intended for use as a component” of fentanyl, as that phrase is most naturally understood. The phrase applies to certain inactive ingredients such as “coatings, binders, and capsules.” See United States v. Generix Drug Corp., 460 U.S. 453, 454, 103 S.Ct. 1298, 75 L.Ed.2d 198 (1983). We are not entirely convinced that it applies to a product, like the patch, that appears to have a mechanical (rather than chemical) effect on the human body.
Second, and more importantly, the district court failed to take full account of the statutory scheme governing federal drug regulation. See K Mart Corp. v. Cartier, Inc., 486 U.S. 281, 291, 108 S.Ct. 1811, 100 L.Ed.2d 313 (1988) (“In ascertaining the plain meaning of the statute, the court must look to the particular statutory language at issue, as well as the language and design of the statute as a whole.”). The court assumed a binary scheme whereby a particular item is defined as either a “drug” or “device” and is regulated accordingly. That is how things used to work, but no longer. In 1990, Congress amended the federal Act to add a third category of products known as “combination products.” Pub.L. No. 101-629, § 16, 104 Stat. 4511, 4526 (1990) (codified as amended at 21 U.S.C. § 353(g)). The apparent purpose of this law was to determine whether ambiguous products would be regulated as drugs or as devices. (The approval process is different for each.) The law gives the Secretary authority to determine a combination product’s “primary mode of action” and to regulate the product accordingly. Simultaneously, Congress deleted language in the definition of “drug” stating that drugs do not “include devices or their components, parts, or accessories.” The deletion reflected the replacement of the binary scheme with a tripartite scheme.
The effect of the 1990 amendment was to create a distinction between how a product is defined and how that product will be regulated. In many cases, it will be obvious that a product should be defined as a statutory “drug” or a statutory “device” and will be regulated as such. In other cases, a product is neither a statutory “drug” nor “device” but rather is a “combination product.” Whether a combination product is regulated as a drug or a device is left to the Secretary’s discretion.
The defendant argues that it is irrelevant whether the fentanyl patch is labeled a “combination product” or a “drug” because the FDA actually regulated the patch as a drug. This argument ignores the plain language of the Michigan immunity statute. A manufacturer is only immune if the suit regards a “product that is a drug” (i.e., if it is defined as a drug) and “if the drug was approved for safety and efficacy by the United States food and drug administration” (i.e., if it is regulated as a drug). Mich. Comp. Laws § 600.2946(5). In turn, a product is a “product that is a drug” only if it falls within the federal definition of “drug.” Mich. Comp. Laws § 600.2945(b). It follows that if a product is better defined as a “combination product” than a “drug” under federal law, then its manufacturer is not immune from suit in Michigan.
At best, Michigan law is ambiguous as to whether the manufacturer of a combination product should be immune from suit. *678 Accepted canons of statutory construction require this ambiguity to work against immunity for manufacturers of combination products. “It is axiomatic that statutes in derogation of the common law should be narrowly construed.” Badaracco v. Comm’r, 464 U.S. 386, 403 n. 3, 104 S.Ct. 756, 78 L.Ed.2d 549 (1984) (Stevens, J., dissenting). Put in a slightly different form, “statutes will not be interpreted as changing the common law unless they effect the change with clarity.” Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 318 (2012). There was no immunity such as this at common law (and indeed, Michigan appears to be the only state that provides immunity in this fashion). In light of the Michigan legislature’s failure to clearly immunize manufacturers of “combination products,” the statute should not be construed to exempt those manufacturers from suit.
The remaining question is whether the fentanyl patch is indeed a “combination product” rather than a “drug.” The federal Act does not explicitly define “combination product” except to say that such products “constitute a combination of a drug, device, or biological product.” 21 U.S.C. § 353(g)(1). FDA regulations more thoroughly define “combination products” to include “produet[s] comprised of two or more regulated components, i.e., drug/device, ... that are physically, chemically, or otherwise combined or mixed and produced as a single entity.” 21 C.F.R. § 3.2(e)(1).
Whether the fentanyl patch meets this definition is a question of fact that we are unprepared to answer in the first instance. Therefore, we find that a remand is appropriate. In light of the now tripartite division of products into drugs, devices, and combination products, the district court shall determine whether the fentanyl patch should be designated as only a “drug” for purposes of the Michigan statute.
Accordingly, the judgment of the district court is reversed and the case remanded for further proceedings consistent with this opinion.

. Before the district court, the plaintiff consented to dismissal of her claim under the Michigan Consumer Protection Act and her products-liability claim insofar as it was premised on a failure to warn. These particular claims are not before us.

. Federal law defines “device'[1] as follows:
The term "device” (except when used in paragraph (n) of this section and in sections 331 (i), 343(f), 352(c), and 362(c) of this title) means an instrument, apparatus, implement, machine, contrivance, implant, in vitro reagent, or other similar or related article, including any component, part, or accessory, which is — ■
(1) recognized in the official National For-mulary, or the United States Pharmacopeia, or any supplement to them,
(2) intended for use in the diagnosis of disease or other conditions, or in the cure, mitigation, treatment, or prevention of disease, in man or other animals, or
(3) intended to affect the structure or any function of the body of man or other animals, and
which does not achieve its primary intended purposes through chemical action within or on the body of man or other animals and which is not dependent upon being metabolized for the achievement of its primary intended purposes.
21 U.S.C. § 321(h).