T.C. Summary Opinion 2010-5

UNITED STATES TAX COURT

JOHN C. ARMBRUST, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 8231-08S.                    Filed January 19, 2010.

John C. Armbrust, pro se.

<u>David S. Weiner</u>, for respondent.


GOLDBERG, <u>Special Trial Judge</u>:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect at the time the petition was filed.  Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.  Unless otherwise indicated, subsequent section references are to the Internal Revenue Code (Code) in

effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Respondent determined a Federal income tax deficiency of $5,000 for 2006. The sole issue for decision is whether petitioner is liable for a 10-percent additional tax for a $50,000 premature distribution from his employer's qualified retirement plan.

## Background

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. Petitioner resided in Illinois when he filed his petition.

In 2006 petitioner earned $57,374 working as a traffic manager for Armbrust Paper Tubes, Inc. (APT), a manufacturer of paper packaging, shipping, and storage products. Petitioner's grandfather started the business.

Tired of living in apartments and paying rent with no equity to show for the payments, petitioner decided to buy a house. He found one he liked outside Chicago, settling on a purchase price of $217,000. However, because of his low credit rating, petitioner was not able to obtain bank financing. To help, petitioner's father closed the purchase on October 12, 2006, recording the deed and obtaining a mortgage from Citibank in his own name, Christopher Armbrust. Petitioner promptly moved into

the house, and the house served from then on as petitioner's sole residence, with petitioner making the mortgage payments. Respondent stipulated that as of December 11, 2008, petitioner had made mortgage payments to Citibank totaling $26,278.79 with respect to the house.

About a week after the closing petitioner reimbursed his father for the closing costs (an amount not in the record) and for the $21,700 downpayment (10 percent of the $217,000 purchase price).  On April 2, 2008, petitioner's father executed a quitclaim deed officially transferring ownership of the house to petitioner and his wife as tenants by the entirety.  The house was the first residence that petitioner owned.

Petitioner obtained the funds to reimburse his father in September 2006 by requesting a $50,000 lump-sum distribution from his retirement plan account.  APT maintained a pension plan named the Armbrust Paper Tubes Pension Trust (APTPT).  At the time of petitioner's distribution request, APT was converting its pension plan into a section 401(k) plan.

The value of petitioner's share of the APTPT as of the October 2006 distribution date was $70,807.  Petitioner had made no contributions into the plan; APT contributions and market returns made up the entire balance.

APTPT fulfilled petitioner's request by withholding $10,000 (20 percent of $50,000) for Federal income tax, distributing

$40,000 to petitioner, and rolling over the remaining $20,807 ($70,807 minus $50,000) into petitioner's new APT section 401(k) plan account. Respondent stipulated, and the Court received into evidence, a letter from Citibank confirming that petitioner's father purchased the home on petitioner's behalf because petitioner's credit rating was too low to qualify for a mortgage and confirming that petitioner used the proceeds from the APTPT distribution to reimburse his father for the closing costs.

APTPT issued two Forms 1099-R, Distributions From Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs, Insurance Contracts, etc., to petitioner for 2006. One Form 1099-R reported the $50,000 distribution, listing a code indicating that the distribution was premature. The other Form 1099-R reported the $20,807 as a rollover distribution.

Petitioner timely filed a 2006 Federal income tax return, properly reporting the $70,807 in total distributions from the APT retirement plan and properly including $50,000 of the total in gross income. The inclusion of $50,000 in gross income put petitioner into a higher tax bracket, causing him to have a balance due of $1,999 beyond the $10,000 in Federal income tax withholding on the distribution and beyond the $10,623 in Federal income tax withholding on his earnings of $57,374 from APT. Petitioner had no sources of income other than these two items, and he claimed the standard deduction. The address petitioner

listed on his 2006 Form 1040, U.S. Individual Income Tax Return, is that of the house at issue.

Respondent, after examining petitioner's 2006 Federal income tax return, issued a notice of deficiency determining that petitioner owed an additional $5,000 in Federal income tax for 2006. According to respondent the additional tax arises because the $50,000 retirement plan distribution was premature and because the distribution did not qualify for any of the exceptions to the 10-percent additional tax.

Petitioner agrees that the distribution was premature but argues that the distribution satisfies the exception to the 10-percent additional tax for taxpayers who use distribution proceeds to pay for qualified acquisition costs of a first-time home purchase.

## Discussion

### I.  Burden of Proof

In general, the Court presumes that the Commissioner's determination set forth in a notice of deficiency is correct, and the taxpayer bears the burden of showing that the determination is in error. Rule 142(a)(1); Welch v. Helvering, 290 U.S. 111, 115 (1933). The burden may shift to the Commissioner regarding factual matters if the taxpayer produces credible evidence and meets the other requirements of the section. Sec. 7491(a). The Commissioner has the burden of production with respect to any

penalty, addition to tax, or additional amount that title 26 (the Internal Revenue Code) imposes.  Sec. 7491(c).

The consideration of burden is moot here because no issue of material fact is in dispute, and we therefore render our decision entirely by application of the law to undisputed facts.

## II.  10-Percent Additional Tax

### A.  The Law Pertaining to the 10-Percent Additional Tax

To discourage individuals from taking premature distributions from retirement plans, Congress enacted section 72(t), imposing an additional tax of "10 percent of the portion of such amount which is includible in gross income."  Sec. 72(t)(1); see also Dwyer v. Commissioner, 106 T.C. 337, 340 (1996) (citing S. Rept. 93-383, at 134 (1973), 1974-3 C.B. (Supp.) 80, 213 ("Premature distributions frustrate the intention of saving for retirement, and the committee bill, to prevent this from happening, imposes a penalty tax" of 10-percent)).  Section 4974(c) describes the various types of retirement accounts and plans whose distributions are subject to the additional 10-percent tax of section 72(t)(1), including individual retirement accounts (IRAs) described in section 408(a) and (b) and, pertinent here, qualified retirement plans described in section 401(a) and (k).

Congress enacted section 72(t)(2) to grant relief in certain circumstances from the 10-percent additional tax.  Examples

include premature distributions made as a result of the death of the taxpayer, sec. 72(t)(2)(A)(ii); because of the taxpayer's being disabled, sec. 72(t)(2)(A)(iii); and to pay health insurance premiums for the taxpayer during certain periods of unemployment, sec. 72(t)(2)(D).

In 1997, as part of the Taxpayer Relief Act of 1997, Pub. L. 105-34, secs. 203, 303, 111 Stat. 809, 829, Congress enacted two more exceptions to the 10-percent additional tax:  Premature distributions for qualified education expenses, sec. 72(t)(2)(E), and, pertinent to this case, premature distributions for first-time home buyers, sec. 72(t)(2)(F).  These two exceptions are available as long as the distribution comes from an individual retirement plan, defined below.  With respect to first-time home purchases, Congress capped the exemption at a lifetime distribution limit of $10,000.  Sec. 72(t)(8)(B).  As a result, the total lifetime tax savings under this provision is $1,000 ($10,000 times 10 percent).

B.  Application of the Law to Petitioner's Facts and Circumstances

Petitioner asserts that he qualifies for relief from the 10-percent additional tax within the guidelines of section 72(t)(2)(F) because he used the distribution to buy his first home.  Respondent counters that petitioner does not qualify for the exception of section 72(t)(2)(F) for two reasons.  First, respondent asserts that the exception does not apply because

petitioner withdrew his funds from an employer-sponsored qualified retirement plan instead of from an IRA. Secondly, respondent asserts that petitioner failed to show compliance with certain technical requirements, including: (1) Purchasing the residence within 120 days of the distribution; (2) spending the entire $50,000 for qualified acquisition costs; and (3) having no ownership in a prior principal residence for at least 2 years before the current acquisition.

To resolve this matter, we first look to the statute, which allows an exemption from the 10-percent additional tax as follows:

> (F) Distributions from certain plans for first home purchases.--Distributions to an individual from an individual retirement plan which are qualified first-time homebuyer distributions (as defined in paragraph (8)). Distributions shall not be taken into account under the preceding sentence if such distributions are described in subparagraph (A), (C), (D), or (E) or to the extent paragraph (1) does not apply to such distributions by reason of subparagraph (B). [Sec. 72(t)(2)(F).]

The plain language of the title alerts the reader that only distributions from "certain plans" are entitled to the exclusion, and the detail identifies the sole acceptable distribution as coming from an "individual retirement plan". The exceptions in the second sentence apply to situations that are not relevant to petitioner's circumstances.

The Code defines an "individual retirement plan" in section 7701(a)(37), stating that "The term 'individual retirement plan'

means--(A) an individual retirement account described in section 408(a), and (B) an individual retirement annuity described in section 408(b)."  The definitions in section 408(a) and (b) include solely IRAs.

Petitioner's distribution was from a pension plan and therefore falls outside the protection of section 72(t)(2)(F). Even if for argument's sake his distribution was from APT's section 401(k) plan, the outcome would be the same.  Both pensions and section 401(k) plans are employer-sponsored retirement plans qualified under section 401(a) and (k), respectively.  In other words, the definition of IRAs in section 408(a) and (b) simply does not include petitioner's qualified retirement plan.

Absent some constitutional defect, conflicting provisions, or ambiguous language, none of which exist here, our role is limited to interpreting the plain language of the statute as Congress enacted it.  Barnhart v. Sigmon Coal Co., 534 U.S. 438, 461 (2002).  The Supreme Court of the United States has "'stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there.  When the words of a statute are unambiguous, then, this first canon is also the last: "judicial inquiry is complete".'" Id. at 461-462 (quoting Conn. Natl. Bank v. Germain, 503 U.S. 249, 253-254 (1992)).

Additionally, more than a decade has passed since Congress enacted section 72(t)(2)(E) and (F) in 1997, and despite significant legislation in the retirement plan area, including the Pension Protection Act of 2006, Pub. L. 109-280, 120 Stat. 780, Congress has not amended the statute. Likewise, this Court has repeatedly declined to expand the exceptions under 72(t)(2)(E) and (F) to include distributions from qualified retirement plans. See, e.g., Uscinski v. Commissioner, T.C. Memo. 2005-124 (education expenses paid from a section 401(k) plan do not qualify for the exception of section 72(t)(2)(E)); Milner v. Commissioner, T.C. Memo. 2004-111 (no "umbrella hardship exception" for a distribution from a qualified plan used to complete remodeling on an existing home, to help purchase a replacement home, and to cover medical disability).

Thus, petitioner is not entitled to relief under section 72(t)(2)(F) or any other provision from the 10-percent additional tax on his $50,000 distribution in 2006 from the APT retirement plan. This result renders irrelevant an analysis of respondent's second contention regarding petitioner's technical compliance with the statute.

Finally, in applying the statute to the facts of this case, it appears odd that Congress granted relief to distributions from IRAs but not from qualified plans in the light of the circumstance that a taxpayer can transfer or roll over a balance

from a qualified retirement plan into an IRA.  However, the House report discussing the enactment of section 72(t)(2)(E) and (F) clearly shows that Congress was focusing solely on IRAs, making no mention of qualified retirement plans.  See H. Rept. 105-148, at 288-289 (1997), 1997-4 C.B. (Vol. 1) 319, 610-611.  Further, the Tax Court is a court of limited jurisdiction and lacks general equitable powers.  Commissioner v. McCoy, 484 U.S. 3, 7 (1987); Hays Corp. v. Commissioner, 40 T.C. 436, 442-443 (1963), affd. 331 F.2d 422 (7th Cir. 1964).  We may not rewrite a law simply because we might "'deem its effects susceptible of improvement.'"  Commissioner v. Lundy, 516 U.S. 235, 252 (1996) (quoting Badaracco v. Commissioner, 464 U.S. 386, 398 (1984)).

In closing, we note that we found petitioner to be sincere, credible, and forthright.  In the final analysis, however, the remedy for petitioner and for all taxpayers in his circumstances lies with Congress, not the judiciary.  See, e.g., Prevo v. Commissioner, 123 T.C. 326, 332 (2004) (a remedy, if any, must originate with Congress).

To reflect the foregoing,

Decision will be entered

for respondent.